**Raul LLORENTE, Petitioner-Appellant,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**No. 857—Docket 81–4320.**

United States Court of Appeals, Second Circuit.

Argued March 12, 1981.

Decided May 14, 1981.

Leonard Bailin, New York City, for petitioner-appellant.

Anthony Ilardi, Jr., Atty. Tax Division, Dept. of Justice, Washington, D.C. (John F. Murray, acting Asst. Atty. Gen. Michael L. Paup, Wynette J. Hewett, Attys., Tax Division, Dept. of Justice, Washington, D.C., of counsel), for respondent-appellee.

Before FRIENDLY, MANSFIELD and KEARSE, Circuit Judges.

MANSFIELD, Circuit Judge:

Raul Llorente, a taxpayer, appeals from a decision of the United States Tax Court filed May 13, 1980, upholding with modifications a statutory Notice of Deficiency issued by the Commissioner of Internal Revenue (Commissioner) pursuant to §§ 6212, 6651(a), 6653(a) and 6654(a), Internal Revenue Code of 1954, which, using the expenditures method to reconstruct Llorente's income for the year 1974, claimed that he had unreported income based on alleged expenditures for (1) cocaine, (2) living expenses, and (3) the purchase of a bar and grill. Llorente claims that the Commissioner's assessment was arbitrary and without rational foundation. We reverse the decision insofar as it upheld the assessment based on an alleged illegal expenditure for cocaine. In all other respects the Tax Court's decision is affirmed.

In September, 1976, the Commissioner sent Llorente a Notice of Deficiency determining that he owed $29,403.76 in income tax, along with penalties and fines totaling another $9,762.06, for unreported income allegedly received during 1974. The largest item in the reconstructed income statement was an entry for $54,000 which, according to the Commissioner, had been "expended [by Llorente] . . . for the purchase of cocaine." Llorente filed a petition with the Tax Court contesting the Notice of Deficiency, and a hearing on the matter was held before Judge Sterrett. At that hearing, Llorente testified that he had never purchased any cocaine and had not entered into any dealings with others to purchase cocaine.

The Commissioner's chief witness, a New York City undercover police agent named John Hernandez, testified that he had seen or overheard known cocaine dealers speaking with Llorente about future shipments of cocaine. Based on this evidence and on the additional fact that as a result of Hernandez' investigation Llorente had been indicted for conspiring to criminally possess and sell a controlled substance and had pled guilty to the crime of attempted conspiracy to criminally possess a controlled substance, the Tax Court, in a six-to-five decision, determined that the Notice of Deficiency had not been prepared arbitrarily. Nevertheless, the Court reduced the cocaine expenditure item from $54,000 to $18,000 on the theory that, although an informant had told Agent Hernandez that Llorente had on one occasion been seen inspecting cocaine costing $54,000, Llorente was only one of three potential buyers present at the time and therefore should not be presumed to have purchased more than one-third of the cocaine.

The stipulated facts reveal that Llorente immigrated to the United States from Colombia in 1965, bringing $1,500 cash with him. By 1972 he and his wife had saved $11,000, $10,000 of which they used that year to make a downpayment on a home. In 1973 he and his wife filed a joint tax

return showing gross income of $13,020, of which $565 represented interest income. In January, 1974, Llorente purchased the La Paz Bar and Grill for $9,000 cash.

Soon after the bar reopened under Llorente's ownership, New York City police officers began investigating some of its customers for their possible participation in a Colombian cocaine network. On March 8, 1975, as a result of this investigation, Llorente was arrested and later indicted by a New York state grand jury on charges of conspiring to criminally possess and sell a controlled substance. On May 24, 1977, Llorente, after remaining in jail for over two years because of his inability to post $300,000 bail, entered a plea of guilty in the New York State Supreme Court to the crime of attempted conspiracy to criminally possess a controlled substance; on September 6, 1977, he was sentenced to time served and released.

Llorente did not file an income tax return for 1974.[1] The Commissioner was advised by John Hernandez, the undercover agent who had led the investigation of the La Paz Bar and Grill, that Llorente had been seen by an informant inspecting six kilos of cocaine worth at least $54,000. Using the expenditures method of income reconstruction, the Commissioner computed Llorente's gross income by adding $54,000, representing the purported cocaine purchase, to estimates of Llorente's living costs ($7,800) and mortgage payments ($3,156). After allowing Llorente certain itemized deductions, the Commissioner determined that Llorente owed income tax amounting to $29,403.76 for the year 1974, plus $9,762.06 in penalties pursuant to I.R.C. §§ 6651(a), 6653(a), and 6654(a). A Notice of Deficiency was sent to Llorente in September, 1976, while he was still incarcerated. Llorente filed a petition with the Tax Court contesting the deficiency calculations, and a hearing was held before Judge Sterrett.

At the hearing Llorente took the stand on his own behalf and denied ever purchasing cocaine or having been involved with any cocaine transactions. He estimated that his 1974 living expenses ran to between $900 and $1,000 per month. He admitted that he had spent $9,000 during 1974 to purchase the bar, but claimed that the sum had come from accumulated family savings: "I had that money saved up, and as proof of that, I have my bank books here—my savings banks." He did not, however, offer the bank books in evidence.

Llorente's principal argument at the hearing was that the Commissioner's Notice of Deficiency was arbitrary and excessive, and that therefore the burden of proof should shift to the Commissioner. In responding to this contention, the Commissioner relied principally on the testimony of undercover Agent Hernandez. Hernandez testified that he had purchased cocaine on several occasions at Llorente's bar during 1974, but had never made a purchase from Llorente himself. Llorente did figure directly, however, in two incidents observed by Hernandez. In the first Hernandez asked Louis Irving Taylor, a La Paz Bar patron from whom he had purchased drugs in the past, whether the shipment he was waiting for had arrived. Taylor got up from the table where he had been sitting with Hernandez and spoke to Llorente out of Hernandez' hearing. When Taylor returned to the table, he informed Hernandez that the shipment had not yet arrived. In the second incident, Hernandez arrived at the bar to purchase cocaine from Alvaro Doronzoro, another drug contact at the La Paz Bar. After Hernandez asked Doronzoro for his cocaine, Doronzoro spoke with Llorente, and Hernandez overheard Llorente respond that the shipment had not arrived.

Hernandez also testified to a third incident involving Llorente which had been recounted to him by an unnamed informant.[2]

---

1.  Llorente's wife did file a 1974 return, indicating that her total taxable income for that year was $779.

2.  A timely hearsay objection was raised by counsel for Llorente, and the testimony was deemed admitted solely for the purpose of

According to Hernandez, his informant had told him that a shipment of six kilos of cocaine had been received in Queens; that Llorente and Doronzoro had gone with the informant to the house where the cocaine was located to inspect it; and that Llorente's opinion had been sought because the cocaine was damp.[3] Hernandez later relayed an account of this third incident to revenue agents from the Manhattan District Director's office, and told them that the cost of cocaine at the time was between $9,000 and $14,000 per kilo. It was on the basis of this information from Hernandez that the Notice of Deficiency was prepared.

By a six-to-five vote the Tax Court, upon reviewing the record of the hearing before Judge Sterrett, upheld the Commissioner's Notice of Deficiency. 74 T.C. at 266. The majority[4] concluded that the evidence of Llorente's knowledge of pending drug shipments, his inspection of six kilos of cocaine, his indictment on a drug-related conspiracy count, and his plea of guilty to a lesser charge demonstrated that the Commissioner had not "arbitrarily placed petitioner in the drug business, a business not noted for its nonprofit purpose." *Id.* The Court then decided that, although the Commissioner was correct in inferring that Llorente was connected "in some manner" with cocaine dealings, the $54,000 expenditure for cocaine, which the Commissioner had attributed to Llorente, should be reduced and that since Doronzoro and the unnamed informant were both present with Llorente at

the time when the six kilos of cocaine were inspected Llorente should not be presumed to have purchased more than one-third of the six kilos. The Court accordingly reduced the cocaine expenditure item in the deficiency notice to $18,000. To this it added the $9,000 which Llorente had admitted spending for purchase of the bar in 1974, as well as an adjusted $10,800 estimate for living expenses, based on Llorente's testimony that his family was spending between $900 and $1,000 per month in 1974.[5]

In responding to Llorente's argument that the Tax Court's recent decision in *Jackson v. Commissioner,* 73 T.C. 394 (1979), and the Ninth Circuit's decision in *Weimerskirch v. Commissioner,* 596 F.2d 358 (9th Cir. 1979), *rev'g,* 67 T.C. 672 (1977), were on point and required the Tax Court to find that the Commissioner's Notice of Deficiency was arbitrary and excessive, Judge Sterrett suggested that *Jackson* and *Weimerskirch* were best read as holding that a Notice of Deficiency ceases to be arbitrary when the taxpayer is shown to have been connected in some fashion with the business in which the unreported income was allegedly generated:

> "The deficiency in *Jackson* was premised on respondent's conclusion that the taxpayer was in the drug business. Yet, there was no firsthand testimony introduced at the trial by respondent to support such a conclusion, and he was compelled to admit that the deficiency was

---

showing the information considered by the Commissioner in arriving at his Notice of Deficiency.

3. After both sides rested, Judge Sterrett recalled Hernandez to the stand, in order to clarify Llorente's involvement with the six kilos of cocaine:

> "THE COURT: Did this confidential informer tell you that these six kilos of cocaine were supposed to all belong to the petitioner?
> "THE WITNESS: Well, they came to get Raul Llorente at the bar to bring him over, and they all went to bring him over to inspect this cocaine, because part of it was damp. And he went over to inspect it.
> "THE COURT: All right, sir. Thank you very much."

4. The six judges making up the majority were unanimous in their belief that the evidence justified a finding that the deficiency had not been prepared arbitrarily. They could not agree, however, on the effect which an opposite determination in a future case would have on which party must bear the burden of proof and the burden of going forward with the evidence. We leave this issue for another day.

5. The Tax Court's revision of the Notice of Deficiency may be summarized as follows:

| | |
|---|---|
| Expenditure for cocaine | $18,000 |
| Expenditure for living expenses | 10,800 |
| Expenditure for bar | 9,000 |
| | $37,800 |
| Income reported by wife | (779) |
| Increase to gross income | $37,021 |

based upon what an informant, who did not testify, had told his agent. Thus, there was no evidence to put Jackson in the drug business, much less any evidence relevant to drug income. Similarly, the facts in *Weimerskirch* are inapposite. There, there was a notice of deficiency based upon statements of unidentified informers and information supplied by law enforcement agencies. There was no evidence linking the petitioner to the drug business." 74 T.C. at 265–66 [footnote omitted].

Since evidence had been presented in this case linking Llorente to the cocaine trade, Judge Sterrett concluded that *Jackson* and *Weimerskirch* were distinguishable.

## DISCUSSION

■ A statutory notice of deficiency based on unreported illegal income is initially entitled to a presumption of correctness. *Helvering v. Taylor*, 293 U.S. 507, 515, 55 S.CT. 287, 290, 79 L.Ed. 623 (1935); *Pizzarello v. United States*, 408 F.2d 579, 583 (2d Cir.), *cert. denied*, 396 U.S. 986, 90 S.Ct. 481, 24 L.Ed.2d 450 (1969). However, that presumption is only as strong as its rational underpinnings. Where it lacks a rational basis the presumption evaporates. Otherwise the Commissioner could, merely by arbitrarily issuing a naked assessment, place upon the taxpayer the unfair, and at time impossible, burden of proving a negative, that he did not receive the illegal income assessed against him.

■ The issue before us in this case is the quantum of proof required to support a finding that the Commissioner acted rationally rather than arbitrarily. The Commissioner contends that his Notice of Deficiency must be accorded a presumption of correctness if it appears that the taxpayer was involved in any way, however undefined, with an illegal activity in which persons usually engage for profit, in this case the illegal importation and sale of cocaine. We disagree. In our view the evidence of record must at least link the taxpayer with some tax-generating acts, such as the purchase or sale of controlled substances.

*Weimerskirch v. Commissioner*, 596 F.2d 358 (9th Cir. 1979); *Jackson v. Commissioner*, 73 T.C. 394 (1979). A mere peripheral contact with illegal conduct is insufficient.

The decisions relied upon by the Commissioner, *DeCavalcante v. Commissioner*, 620 F.2d 23 (3d Cir. 1980); *Avery v. Commissioner*, 574 F.2d 467 (9th Cir. 1978); *Carson v. United States*, 560 F.2d 693 (5th Cir. 1977); *Gerardo v. Commissioner*, 552 F.2d 549 (3d Cir. 1977); *Pizzarello v. United States, supra*, do not support his contention. On the contrary, they indicate, in accordance with the holdings in *Weimerskirch* and *Jackson*, that mere linking of a taxpayer with the drug business will not suffice and that the presumption will attach only upon a showing that the taxpayer's involvement was sufficient to support an inference that he received or used funds in the course of his engagement in the unlawful activity. In each case the Commissioner's determination was upheld where there was evidence that the taxpayer had participated directly in an illegal tax-generating activity, such as supervision and control of gambling operations (*DeCavalcante*), selling drugs to a government agent (*Avery*), running a wagering business (*Pizzarello, Carson*), or collecting gross wagering receipts (*Gerado*). The notice of deficiency was found to be arbitrary, however, insofar as it covered periods for which there was no evidence of direct involvement. Indeed, in *DeCavalcante* the court specifically rejected the Commissioner's argument that since the taxpayer's connection with a gambling operation "manifestly did not arise overnight" the assessment should be upheld and pointed out that "no inference is reasonable if it is wholly lacking of even a minimal factual basis," 620 F.2d at 28.

■ Applying these principles here, the Commissioner's determination that Llorente expended funds to purchase cocaine during 1979 must be viewed as arbitrary and without rational foundation. Agent Hernandez never testified to having participated in a cocaine sale involving Llorente. The mere fact that Llorente was heard to say that a particular shipment of cocaine had not yet

arrived does not constitute evidence that he ever made expenditures for or sales of cocaine. Nor is the informant's story that Llorente inspected a shipment of damp cocaine sufficient to support the Commissioner's determination since this was hearsay, in inadmissible to establish the truth of the facts asserted, to which Llorente's counsel properly objected, see I.R.C. § 7453, Tax Court Rule 143.[6] Finally, Llorente's indictment for conspiracy and guilty plea to a charge of attempted conspiracy to criminally possess a controlled substance do no more than place him on the fringes of illegal activity.[7] They hardly demonstrate that Llorente ever actually purchased or sold cocaine.

 Since it lacks adequate evidentiary support the Commissioner's assessment of income tax liability against Llorente based on expenditures for cocaine must be eliminated from the Notice of Deficiency. The Tax Court's other contested charges, however, stand on a different footing. We see no reason to reduce the estimate of Llorente's 1974 living expenses, which was made by the Tax Court on the basis of Llorente's own testimony. Although Llorente had stipulated to a lower estimate prior to trial, he should not be allowed to return to the stipulated amount after having testified under oath to a greater one. And the Tax Court was certainly not bound by the earlier stipulation. *Mead's Bakery, Inc. v. Commissioner*, 364 F.2d 101 (5th Cir. 1966). We will also let stand the $9,000 expenditure item based on Llorente's 1974 purchase of the bar. Although Llorente argues on this appeal that he was "unpre-

pared and unable to produce the bank book at the trial" which would allegedly have shown that the money to purchase the bar was drawn from Llorente's savings account, Llorente's testimony was that he had his savings books with him and was prepared to turn them over. When he failed to do so, the Tax Court was entitled to disbelieve Llorente's claim that the funds were drawn from savings. The existence of interest income during 1973 does not require an opposite result.

The case is remanded for recalculation of taxpayer's deficiency in accordance with this opinion. No costs.

---

**6.** *Avery v. Commissioner, supra,* a Ninth Circuit case cited by the Commissioner for the proposition that hearsay inadmissible for its truth value may nevertheless be considered in determining whether to grant a motion to relieve the taxpayer of the burden of proof, is inapposite here. See note 4 *supra.* In the subsequent *Weimerskirch* case, the same court of appeals clearly held that the Commissioner's determination cannot be sustained where there is no substantive evidence in the record to support it.

**7.** The indictment for conspiracy to criminally possess and sell a controlled substance alleged

that Llorente helped arrange for the importation of cocaine and that his bar and grill was used by other members of the conspiracy to discuss and transact cocaine sales. The only overt acts with which Llorente was charged consisted of meetings with other members of the conspiracy. Nowhere does the indictment charge Llorente with participation in an actual purchase or sale of cocaine. This contrasts with *Laino v. United States*, 633 F.2d 626, 632 (2d Cir. 1980), where the effect of the indictment was to charge the taxpayer with receiving illegal income.