DANA L. GRAHAM, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Graham v. Commissioner
Docket No. 23617-85.
United States Tax Court
T.C. Memo 1987-410; 1987 Tax Ct. Memo LEXIS 407; 54 T.C.M. (CCH) 171; T.C.M. (RIA) 87410; August 24, 1987. *407 James D. O'Connell, for the petitioner. Margaret A. Satko, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined a deficiency in, and additions to, petitioner's Federal income tax for 1984, as follows: Additions to Tax
Deficiency
§ 6651(a) [1]
§ 6653(a)(1)
§ 6653(a)(2)
§ 6654
§ 6661
$ 10,468
$ 1,046.80
$ 523.40
*
$ 658.13
$ 1,046.80
Disposition of the case turns upon whether cash found in petitioner's possession had its source in income of petitioner in gifts from petitioner's grandmother. For reasons of convenience, we have combined our findings of tact and opinion. Some of the facts have been stipulated and are so found. Petitioner resided in Detroit, Michigan at the time the petition herein was filed. He did not file a Federal income tax return for 1984. On July 25, 1984, petitioner was an occupant of *408 an automobile that was stopped for speeding by Florida police. The trunk was searched and in it the police found, among other things, 12 grams of marijuana, a 9 millimeter UZI semi-automatic with two boxes of ammunition and two clips and a floor safe containing $ 22,260 in cash, all of which belonged to petitioner. On December 19, 1984, respondent made a termination assessment against petitioner for the taxable year 1984 in the amount of $ 10,305. A notice of deficiency was issued on June 12, 1985 in which petitioner's income was calculated as follows: Cash
$ 22,260
Drugs
[2] 100
UZI 9mm
475
Ammunition
30
Clips
20
Personal Living
[3] 10,006
Total Applications (1984)
$ 32,981
The parties have locked horns on the respondent's determination that the cash seized on July 25, 1984, which belonged to petitioner, represented income. Petitioner contends that it did not on the ground that such cash came from gifts from petitioner's grandmother in late 1981 and early *409 1982 aggregating $ 104,000. The burden of proof is on petitioner. [4]; Rule 142(a). We hold that he had failed to carry this burden. Petitioner rests his case on his own testimony and that of his mother. Both of them testified that in 1981 petitioner's grandmother, Emma Moore, received $ 111,000 in settlement of a personal injury lawsuit, that she deposited this money with the Detroit Bank and Trust Company (now known as Commerica) and that petitioner's grandmother than gave petitioner $ 52,000 in a single gift in October, 1981 and another $ 52,000 by way of several payments from that *410 time until April, 1982, when the grandmother dies. According to petitioner and his mother, these funds were to have been to acquire a record business and to establish the Graham Medical Center. Neither of these products ever materialized. According to petitioner and his mother, the $ 22,260 in cash came from these gifts. There are several defects in petitioner's position. Initially, we note that we are not required to accept as gospel the self-serving testimony of petitioner and his mother, particularly in the absence of corroborating evidence. , affg. a Memorandum Opinion of this Court; , affg. on this issue a Memorandum Opinion of this Court; , (1986). [5] As will subsequently appear, the gaps in petitioner's case are accentuated by the failure to call certain witnesses who might have supplied some corroborative evidence. ; . [6]
*411 It is by no means clear that petitioner's grandmother actually received any money as her own. The only documentary evidence is a consent judgment in favor the plaintiff in a case entitled "Emma Moore, Administratrix of the Estate of Pauline Collins, Deceased, Plaintiff vs. Harper Hospital, Defendant." There is nothing in the record to explain the relationship of petitioner's grandmother to Pauline Collins or why any sums paid pursuant to that judgment should be treated as belonging to petitioner's grandmother. One Peter Barbara apparently represented Emma Moore in that action and it appears that this check, which was not offered in evidence, was the method by which payment to petitioner's grandmother was accomplished. Although Peter Barbara apparently was not available to testify, one Robert Webster was identified by petitioner in pre-trial proceedings as the "Receiver appointed by the State Court, to handle the affairs of attorney Peter Barbara" and presumably could have been called as a witness by petitioner but was not. A similar situation exists with respect to he claimed withdrawal of funds, apparently by various cashier checks, from the Detroit Bank and Trust Company and *412 the subject of the alleged gifts to petitioner by his grandmother. Respondent does not dispute petitioner's assertion that the records of the Detroit Bank and Trust Company have been destroyed, but petitioner indicated in pre-trial proceedings that an employee of the bank would be subpoenaed to testify as to the withdrawals but then took no action in this regard. A further absence of corroborative evidence, which might have been available, is reflected in the fact that petitioner had planned to establish a medical center with a cousin who was training to be a doctor, but no effort was made to call the cousin as a witness. Finally, in addition to the absence of corroborative evidence, there were numerous inconsistencies and considerable vagueness in the testimony of petitioner and his mother. The long and the short of the matter is that petitioner has failed to carry his burden of proof that the cash in question came out of gifts from his grandmother. Such being the case, respondent's determination with respect to the $ 22,260 must be sustained that the cash did not have its source in taxable income. [7] In this connection, we think it strains credulity to accept the testimony *413 of petitioner (who appeared to be a young man in good health) that, aside from small amounts of money, he neither earned nor had any income during a 14-year period -- 1972 through 1985. Cf. . [8]
This brings us to the item of income in the amount of $ 10,006 for personal living expenses determined by respondent in his notice of deficiency based upon Bureau of Labor statistics. Use of such statistics has been specifically approved. , *414 affg. a Memorandum Opinion of this Court; . Cf. , affg. a Memorandum Opinion of this Court. Petitioner having produced no evidence in regard to his personal living expenses, respondent's determination as to this item is sustained. With respect to the various additions to tax, the burden of proof is also on the petitioner. ;, affd. by an unpublished opinion ; , affd. by an unpublished opinion . Since he has produced no evidence in respect to any of these additions, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code in effect during the year in issue, and all rule references are to Tax Court Rules of Practice and Procedure.↩
*. 50% interest of the interest due on $ 10,468. ↩
2. The parties have stipulated that the value of the drugs is $ 15. ↩
3. This amount is based upon Bureau of Labor statistics as to the cost of living for an individual taxpayer.↩
4. Petitioner had not argued that respondent has the burden of coming forward with evidence linking him to an income-producing activity and, any event, such argument would be unavailing. ; . Nor does petitioner raise any issue of illegally obtained evidence, no doubt because the seizure was accomplished exclusively by state police officers. . ↩
5. See also . ↩
6. See also , affd. without published opinion . ↩
7. Petitioner made no attempt to contradict the contents of a police report, which the parties stipulated would be the testimony of the police officers if called to testify, that the ammunition and clips, belonged to petitioner, or separately, to show that these items did not have their source in taxable income. ↩
8. Our conclusion in regard to the absence of evidence as to petitioner's sources of income extends to the imposition of the self-employment tax, which is included in the basic deficiency, an item as to which petitioner also had the burden of proof. . ↩