JAMES CALVIN SEGERS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Segers v. Commissioner
Docket No. 30426-85
United States Tax Court
T.C. Memo 1990-28; 1990 Tax Ct. Memo LEXIS 28; 58 T.C.M. (CCH) 1230; T.C.M. (RIA) 90028; January 17, 1990; As corrected January 18, 1990 *28 Respondent determined that petitioner had unreported income from the sale of narcotics during 1984. Held: The usual presumption of correctness attaches to respondent's determination because such determination was not shown to be arbitrary and excessive. Held further: To the extent that respondent's determination of unreported income from the sale of narcotics is not reduced by concession, we sustain respondent since petitioner offered no credible evidence showing that the cash seized from him by police did not have its source in income from the sale of narcotics. James Calvin Segers, pro se. Jeanne Gramling and Alan I. Weinberg, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, *29 Judge: Respondent determined a deficiency in petitioner's Federal income tax for the 1984 taxable year in the amount of $ 185,945. Respondent also determined additions to tax for that year as follows: Additions to Tax
Section
Section
Section
Section
6651(a)(1) [1]
6653(a)(1)
6653(a)(2)
6654
$ 18,595
$ 9,297
*
$ 11,691
After concessions, [2] the issue we must decide is whether petitioner had unreported income of $ 23,118 in 1984 from the sale of narcotics. For reasons of convenience, we have combined our findings of fact and opinion. Some of the facts have been stipulated and are found accordingly. Stipulations and exhibits attached *30 thereto are incorporated herein by reference. Petitioner resided in Mocksville, North Carolina, at the time he filed his petition in this case. On October 20, 1984, officers of the Winston-Salem Police Department arrested petitioner at his then residence in Winston-Salem, North Carolina. Prior to petitioner's arrest, an informant who previously had been arrested on drug-related charges allegedly purchased several grams of heroin from petitioner while under police surveillance. The informant made the alleged purchase of heroin with marked bills which the police had provided to him for that purpose. In conjunction with petitioner's arrest, the arresting officers executed a search warrant pursuant to which numerous items were seized from petitioner, petitioner's residence, and other persons present therein. The officers seized cash in the amount of $ 23,178, including $ 23,118 which belonged to petitioner. [3] Some but not all of the marked bills were seized from petitioner and another person present at the time of petitioner's arrest. *31 Petitioner was subsequently charged with four counts of felonious trafficking in heroin. Petitioner pled guilty to those charges immediately after his Motion to Suppress Evidence was denied during a hearing on such motion held February 5, 1985. Pursuant to a judgment entered the next day by the Superior Court, Forsyth County, petitioner was sentenced to an 18-year prison term which he is currently serving. In November 1984 respondent made a termination assessment of $ 187,246, which reflected an unspecified amount of income from the sale of narcotics. Petitioner neither sought review of the termination assessment nor filed a 1984 income tax return. Respondent mailed his statutory notice of deficiency to petitioner on June 10, 1985. Pursuant to that notice respondent determined a deficiency in the amount of $ 185,945, [4] which reflected $ 382,948 of unreported income from the sale of narcotics. *32 In his post-trial brief, respondent conceded that petitioner's unreported income from the sale of narcotics should be limited to the amount of cash seized from him. Accordingly, disposition of this case turns upon whether such cash had its source in income from the sale of narcotics by petitioner in 1984. As a preliminary matter, however, we must address the argument which petitioner raises with respect to burden of proof. Petitioner maintains, in effect, that respondent's determination was arbitrary and erroneous in that it was based upon inadmissible hearsay declarations of the informant, who was not called to testify at trial, and upon assumptions made by the arresting officer, Detective Hutcherson of the Winston-Salem Police Department, regarding the alleged sale of narcotics by petitioner during 1984. In that connection, petitioner also maintains that certain evidence, including the cash in question, was obtained pursuant to an illegal search and seizure and that the events leading to his arrest constituted entrapment. [5] Respondent, on the other hand, maintains that his statutory notice of deficiency was based upon reliable information and reasonable projections of petitioner's *33 income from the sale of narcotics in 1984. Respondent's determination of deficiency is presumptively correct. Foster v. Commissioner, 391 F.2d 727, 735 (4th Cir. 1968), remanding on another issue a Memorandum Opinion of this Court. Thus, petitioner bears the burden of proving the incorrectness of such determination and the burden of going forward with evidence showing the correct amount of his income. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a). However, the presumption in favor of respondent's determination *34 fails and the burden of going forward with the evidence shifts to respondent if petitioner demonstrates that such determination is arbitrary and excessive (e.g., without "factual foundation" or "rational basis"). Helvering v. Taylor, 293 U.S. 507, 514-515 (1935); Berkery v. Commissioner, 91 T.C. 179, 186 (1988), affd. without published opinion 872 F.2d 411 (3d Cir. 1989), cert. denied    U.S.    (1989); Llorente v. Commissioner, 74 T.C. 260, 264 (1980), affd. in part and revd. and remanded in part 649 F.2d 152 (2d Cir. 1981). By arguing that respondent's determination is arbitrary and erroneous, petitioner asks this Court to look behind the statutory notice of deficiency. Ordinarily, we decline to look behind a statutory notice of deficiency to examine the evidence used or to consider the propriety of respondent's motives or the administrative policy or procedure involved in making his determination. Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327 (1974); Suarez v. Commissioner, 58 T.C. 792, 813 (1972), overruled in part Guzzetta v. Commissioner, 78 T.C. 173, 184 (1982). *35 As we observed in Rosano v. Commissioner, 46 T.C. 681, 687 (1966), "the Commissioner's determination may often rest upon hearsay or other inadmissible evidence, and we know of no rule of law calling for a review of the materials that were before the Commissioner in order to ascertain whether he relied upon improper evidence * * * ." A trial before the Tax Court is a proceeding de novo. Thus, our decision regarding petitioner's tax liability must be based on the merits of the case and not on any previous record developed at the administrative level. Greenberg's Express, Inc. v. Commissioner, supra at 328. Only on rare occasions has this Court recognized an exception to the general rule and looked behind a notice of deficiency. Those cases involved unreported illegal income with respect to which respondent, resting solely on the presumption of correctness, introduced no direct or substantive evidence to support his determination. See, e.g., Dellacroce v. Commissioner, 83 T.C. 269, 280 (1984); Jackson v. Commissioner, 73 T.C. 394, 401 (1979). We hold that the instant case does not fit within the exception. Respondent *36 presented substantive evidence linking petitioner to the tax-generating activity which forms the basis of the deficiency determination, i.e., the sale of narcotics. We think such evidence is sufficient to give petitioner the burden of going forward and proving the incorrectness of the deficiency determination. Shriver v. Commissioner, 85 T.C. 1, 4 (1985). In his testimony, Detective Hutcherson described the events leading up to petitioner's arrest on charges of trafficking in heroin, including the alleged purchase of heroin from petitioner by an informant who was under police surveillance. He also testified that the search which was conducted in conjunction with the arrest yielded the cash in question and a small quantity of various narcotics. Detective Hutcherson's testimony, which we found to be persuasive and credible, establishes petitioner's connection to the sale of narcotics during the year in issue. That connection is further established by the fact that petitioner pled guilty to four counts of trafficking in heroin. The determination of unreported income from the sale of narcotics is reasonable in light of petitioner's connection to such activity and *37 his failure to file a return. Under those circumstances, it cannot be said that respondent's determination was arbitrary and excessive. The fact that respondent later conceded to a reduction in the deficiency does not change our view of his determination, [6] which was based on information available to him at the time such determination was made. Accordingly, we will not look behind the statutory notice of deficiency, and petitioner bears the burden of going forward and proving the incorrectness of respondent's deficiency determination. Of course, petitioner's burden extends only to that portion of such deficiency which has not been reduced by concession. We turn to the question of whether petitioner has *38 satisfied his burden. In that connection, we must decide the credibility of petitioner's explanation of the source of the $ 23,118 seized by police, since respondent determined that that amount constitutes unreported income from the sale of narcotics. Petitioner rests his case primarily upon his own testimony. [7] According to petitioner, the cash in question came from the sale of Eddie Miller's (Miller) home and the sale of an automobile belonging to petitioner's son, and not from the sale of narcotics or any other illegal activity. Petitioner's testimony in that regard is vague and unconvincing. Moreover, it appears from the record that petitioner gave contradictory testimony regarding the amount of cash seized from him. He testified that at the time of his arrest he had only $ 12,600 to $ 12,800 in his house. He also testified that when his cash was counted by him and friend shortly before his arrest there was approximately $ 15,800. On brief, however, he conceded that the police seized $ 23,118 from him. *39 We note that positive and uncontradicted testimony of a particular fact is ordinarily accepted. However, testimony which is inherently questionable, improbable, or unreasonable may be rejected even in the absence of contradictory testimony. Urban Redevelopment Corp. v. Commissioner, 294 F.2d 328, 332 (4th Cir. 1961), affg. 34 T.C. 845 (1960); Schad v. Commissioner, 87 T.C. 609, 620 (1986). Petitioner's failure to introduce into evidence books, records, or other documentary evidence substantiating the amount and source of the cash seized from him accentuates the improbability of his contention that such cash did not have its source in taxable income. Likewise, his failure to call certain witnesses who might have supplied some corroborative evidence casts further doubt upon his explanation of the source of the cash in question. Schad v. Commissioner, supra.
Petitioner testified that $ 12,500 of the cash seized from him was a portion of the proceeds from the foreclosure sale of Miller's home in which he participated on behalf of Miller, while acting under a power of attorney. Petitioner further testified that, *40 although the $ 12,500 was needed to repay a debt incurred by Miller, he made a deal with Miller's creditor pursuant to which he was permitted to retain the funds for his own use during a short period of time prior to repayment. According to petitioner's testimony on cross-examination, however, he kept $ 12,500 of the proceeds in a paper bag in his house from the time of the sale, which he claims took place prior to cancellation of his power of attorney on July 7, 1983, until it was seized from him on October 20, 1984. Petitioner offered no explanation of why he would keep such a large sum of cash in a paper bag in his house for such a long period of time without either repaying the debt owed by Miller or putting the money to the use for which he arranged to retain it temporarily. To corroborate his testimony, petitioner introduced a copy of the power of attorney granted to him by Miller on November 24, 1982, and a copy of the cancellation of such power executed by Miller on July 7, 1983. Those documents corroborate petitioner's testimony only insofar as he testified that Miller granted him a power of attorney. However, there is no evidence corroborating the foreclosure sale or *41 the deal pursuant to which petitioner arranged with Miller's creditor to retain temporarily part of the proceeds of such sale. Without any corroboration for his version of those purported events, we find petitioner's testimony regarding the source of the $ 12,500 inherently implausible and unworthy of our belief. A similar situation exists with respect to the claimed sale of the automobile belonging to petitioner's son. Aside from his own self-serving testimony, petitioner offered no evidence to support his contention that the proceeds from such sale constituted the other source of the cash seized from him. We are not required to accept petitioner's self-serving testimony, particularly in the absence of corroborating evidence. Geiger v. Commissioner, 440 F.2d 688, 689 (9th Cir. 1971), affg. a Memorandum Opinion of this Court; Urban Redevelopment Corp. v. Commissioner, supra. We decline to do so in this instance because, in addition to being uncorroborated, petitioner's testimony is extremely vague. Petitioner's testimony reflects neither the date of the purported sale nor the amount of proceeds generated thereby. The vagueness of petitioner's *42 testimony also raises considerable doubt as to who purportedly purchased the automobile and how the proceeds of such sale were distributed. On this unsatisfactory record, we cannot conclude that petitioner obtained any of the cash seized from him in connection with the claimed sale of his son's automobile. In short, petitioner has failed to carry his burden of proving that the $ 23,118 had a source other than the sale of narcotics. Because petitioner failed to file a return and has unreported income from the sale of narcotics, respondent is authorized to determine the existence and amount of petitioner's income by any method that clearly reflects income. Sec. 446(b). In the absence of credible evidence showing that the cash in question had a nontaxable source, we hold that respondent's determination that that cash constitutes petitioner's unreported income from the sale of narcotics must be sustained. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. Unless otherwise noted, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
*. 50 percent of the interest due on $ 185,945 ↩
2. Petitioner has offered no proof or argument regarding the self-employment tax, which is included in the deficiency, or the additions to tax determined by respondent. Therefore, we consider those issues to have been conceded by him.↩
3. Certain contradictions exist in the record regarding the exact amount of petitioner's cash seized by the police. However, we need not reconcile those contradictions because petitioner conceded on brief that the police seized cash in the amount of $ 23,118, which he claims as his own.↩
4. The difference between the deficiency and the termination assessment is apparently attributable to a computational error in the amount of tax liability. According to respondent, the amount of the deficiency reflects the correct computation of petitioner's tax liability based on $ 382,948 of unreported income from the sale of narcotics.↩
5. The Superior Court, Forsyth County, presumably passed on the legality of the events leading to petitioner's arrest and the search and seizure conducted in conjunction therewith before denying petitioner's Motion to Suppress Evidence and accepting his guilty plea. Thus, we consider petitioner's argument regarding illegally obtained evidence and entrapment to be without merit. Moreover, even if the search and seizure had been illegal, the evidence would be admissible in the instant case absent a showing of Federal participation in such search and seizure. See United States v. Janis, 428 U.S. 433, 459↩ (1976).
6. A showing of mere excessiveness is never sufficient to overcome the presumption in favor of respondent's determination; such a situation exists in many cases where the courts decide that respondent is entitled to a deficiency in a lesser amount than that set forth in his deficiency notice. Llorente v. Commissioner, 74 T.C. 260, 278 (1980) (Tannenwald, J., concurring), affd. in part and revd. and remanded in part 649 F.2d 152↩ (2d Cir. 1981).
7. Mr. Grace, petitioner's court-appointed attorney in the prior criminal proceedings, testified on behalf of petitioner. However, he indicated that he had no personal knowledge of the amount or source of the cash in question and that his testimony was based solely on what petitioner had told him.↩