JOSEPH VESSIO, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Vessio v. Commissioner
Docket No. 21946-87
United States Tax Court
T.C. Memo 1990-218; 1990 Tax Ct. Memo LEXIS 237; 59 T.C.M. (CCH) 495; T.C.M. (RIA) 90218; April 30, 1990, Filed *237 Decision will be entered under Rule 155. Jared J. Scharf, for the petitioner. George H. Soba, for the respondent. WELLS, Judge. WELLS
*713 MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined the following deficiencies in and additions to petitioner's Federal income tax: Addition Under Section [1]
Year
Deficiency
6653(b)(1)
6653(b)(2)
6661
1983
$ 65,103
$ 32,552
*
$ 16,726
1984
7,783
3,891 **
1,946
*238 The instant case presents the following issues: (1) whether respondent's determination that petitioner had specified amounts of unreported income from loansharking and bookmaking in 1983 and 1984 is entitled to a presumption of correctness; (2) whether petitioner had unreported income from those sources in the amounts of $ 133,498 and $ 19,071 in 1983 and 1984, respectively; (3) whether the foregoing amounts of income are subject to the self-employment tax under section 1401(a); (4) whether petitioner failed to report $ 390 of interest income in 1984; (5) whether petitioner is liable for additions to tax for fraud under section 6653(b)(1) and (2); and (6) whether petitioner is liable for additions to tax for substantial *239 understatements of tax under section 6661. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by reference. Petitioner resided in Carmel, New York, when he filed his petition. On February 2, 1984, Suffolk County Police ("the police") searched petitioner's home in Centereach, New York, pursuant to a warrant. Among the items discovered by the police were a black notebook and a blue notebook, $ 152,569 in cash, $ 151,372 of which was located in a safe and the remainder of which was on a dresser, numerous "policy slips" (slips of paper containing names and numbers and used in bookmaking), several envelopes containing such slips of paper, and two firearms, a Smith and Wesson .38 caliber revolver and a Baretta .38 caliber automatic, both of which were located in the ceiling of petitioner's basement. The search of petitioner's home followed an investigation that began in October 1983 and included wiretapping petitioner's telephone and surveillance. Detective Vincent F. Lowe, who headed the investigation, had been with the Suffolk County District Attorney Rackets Bureau for 12 *240 years and had investigated 75 to 100 cases, half of which had involved loansharking. Loansharking is the practice of lending money at a usurious rate of interest. During surveillance, the police saw petitioner carry envelopes of the sort containing the policy slips from the trunk of his car to a restaurant in the Bronx called "The Corner Restaurant." Following the search of petitioner's home, a Suffolk County Grand Jury issued an indictment charging petitioner with making usurious loans in concert with other individuals, possession of usurious loan records, possession of gambling records, and two counts of possession of a weapon. Petitioner pleaded guilty to one count of attempted usury and to one count of criminal possession of a weapon. At the hearing at which petitioner entered his pleas, petitioner testified (1) that he met Dennis Szwech in October 1983 and loaned him $ 7,500 at an interest rate of five percent per week, (2) that he and others collected weekly interest payments on the loan, (3) that he directed someone to collect the principal balance of the loan, and (4) that he made similar loans to others at illegal interest rates. *714 Raymond Jermyn, Assistant District *241 Attorney for Suffolk County, advised respondent of petitioner's conviction. Respondent subsequently determined that petitioner had income from loansharking and bookmaking equal to the $ 152,569 in cash seized at his home, that seven-eighths of such amount was attributable to 1983, and that the remaining one-eighth constituted income for 1984. Respondent based his allocation on the black notebook seized from petitioner's home on February 2, 1984. That black notebook evidences loansharking from June 1983 through February 1984. [2]
Petitioner filed Federal income tax returns for 1983 and 1984 and reported taxable income of $ 15,915 and $ 6,167, respectively. Petitioner's mother died on December 29, 1983. Petitioner's father was a loan shark. Prior to the death of petitioner's mother, petitioner's father had been ill, and petitioner *242 had occasionally helped his father collect loans. Petitioner, petitioner's sisters Mildred Russo Vessio and Lisa Vessio, petitioner's nephew Michael Russo, and the Estate of Sue Vessio (petitioner's mother) all made separate claims against Suffolk County for the seized items, including the cash. The claims were waived as part of petitioner's plea agreement. A New York State estate tax return signed by Lisa Vessio, as executrix, on April 21, 1988, lists among the assets of the estate "Cash on Hand" of $ 153,000. The return discloses no estate tax liability. OPINION I. ILLEGAL INCOME Burden of Going Forward
We must first decide whether respondent's determination that petitioner had the determined amounts of unreported illegal income in 1983 and 1984 is entitled to a presumption of correctness. As a general rule, respondent's determination is presumed correct, and a taxpayer bears the burden of proof and the burden of going forward. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). When a determination is based on unreported illegal income, however, *243 it will not be presumed correct and the burden of going forward with the evidence will be shifted to respondent who must adduce "substantive evidence" linking the taxpayer to the illegal, income-producing activity. Llorente v. Commissioner, 649 F.2d 152, 156 (2d Cir. 1981); Petzoldt v. Commissioner, 92 T.C. 661, 688 (1989); Berkery v. Commissioner, 91 T.C. 179, 195 (1988), affd. without published opinion 872 F.2d 411 (3d Cir. 1989). Since an appeal in this case lies in the Second Circuit, which we are bound to follow, see Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), cert. denied 404 U.S. 940 (1971), we look to the cases decided therein for guidance here. In Llorente, the court held that respondent had failed to adduce the necessary proof, reasoning that evidence of "mere peripheral contact with illegal conduct" does not suffice. 649 F.2d at 156. In the trial of that case, respondent relied upon the testimony of an undercover agent that he had seen or heard cocaine dealers speaking with the taxpayer about cocaine *244 shipments, the taxpayer's indictment for conspiracy to possess and sell a controlled substance, and the taxpayer's guilty plea to attempted conspiracy to possess a controlled substance. 649 F.2d at 153. In preparing the notice of deficiency, respondent also relied upon the undercover agent's claim that an informant had seen the taxpayer inspect six kilos of cocaine worth at least $ 54,000. 649 F.2d at 154. The court held that the informant's statement that the taxpayer had inspected heroin was hearsay and, therefore, could not be used to support respondent's determination. 649 F.2d at 157. We so interpreted Llorente in Dellacroce v. Commissioner, 83 T.C. 269 (1984), and further held that any negative inferences to be drawn from the taxpayer's invocation of the Fifth Amendment privilege against self-incrimination did not constitute substantive evidence under the situation of that case. 83 T.C. at 283-284, 286. In Pizzarello v. United States, 408 F.2d 579 (2d Cir. 1969), the court held that the government had improperly estimated a taxpayer's income from illegal wagering and that, *245 therefore, a jeopardy assessment based upon the estimate was excessive. The government had estimated income for a five-year period by using average receipts for a three-day period within one of the five years, without offering any evidence that the activity had in fact been conducted over the full five-year period. 408 F.2d at 583. The court remanded the case for a determination as to whether the denial of injunctive relief would subject the taxpayer to "irreparable harm." 408 F.2d at 587. The foregoing exception to the general rule regarding the burden of going forward does not apply where a determination is based upon seized cash. Such a determination is entitled to a presumption of correctness, even in the absence *715 of substantive proof linking the taxpayer to illegal income. Schad v. Commissioner, 87 T.C. 609, 618-619 (1986). In Schad, we explained, "We think connecting petitioner to the funds that form the basis of the deficiency is sufficient to give him the burden of proving the deficiency determination erroneous." 87 T.C. at 620. *246 Cash had been seized from the taxpayer in 1983 and formed the basis for respondent's deficiency determination for that year. Despite the fact that $ 152,569 was seized from petitioner's possession and respondent has determined that such amount represents income to petitioner, we do not rely upon those cases holding that determinations based upon seized cash are entitled to a presumption of correctness. Our review of such cases discloses that respondent invariably determined that the seized cash represented income in the year of seizure. [3] Here, by contrast, respondent's determination is that the seized cash represents income for two taxable periods, i.e., 1983 and 1984. Respondent has allocated the income between the two years on the basis of evidence other than the cash itself, specifically, the black notebook. Consequently, we cannot say that the determination is based on the seized cash. It is based, rather, on both the seized cash and other evidence. *247 In Jackson v. Commissioner , 73 T.C. 394, 402 (1979), we held that a determination was not entitled to a presumption of correctness because respondent had failed to produce evidence linking the taxpayer to illegal, income-producing activity for the period in issue. In that case, respondent's determination was not based upon cash seized from the taxpayer in 1971 (the year in issue was 1970). 73 T.C. at 399. See Tokarski v. Commissioner, 87 T.C. 74, 76 n. 4 (1986). Thus, respondent's determination in the instant case will not be presumed correct in the absence of substantive evidence linking petitioner to illegal income in 1983 and 1984. Respondent contends that substantive evidence links petitioner to loansharking in both 1983 and 1984. We agree with respondent. When entering his guilty plea to attempted criminal usury, petitioner admitted that in late 1983 he lent Mr. Szwech $ 7,500 at five-percent interest per week and collected weekly interest payments. Petitioner also admitted making usurious loans to others. Although petitioner's counsel has objected to the admissability of petitioner's statements on relevancy *248 and hearsay grounds, we consider such objections meritless. The Federal Rules of Evidence generally apply in proceedings before this Court. Petzoldt v. Commissioner, supra at 671. That the statements are relevant does not require discussion. Further, admissions of a party opponent are not hearsay. Fed. R. Evid. 801(d)(2). The black notebook is also substantive evidence that petitioner was a loan shark in 1983 and 1984. Detective Lowe, who had extensive experience in the investigation of loansharking, identified the notebook as a record of loansharking. Petitioner does not appear to contest Detective Lowe's characterization, but does argue that respondent has failed to authenticate the notebook as petitioner's record. We disagree. Rule 901(a) of the Federal Rules of Evidence provides as follows: The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. Rule 901(b) of the Federal Rules of Evidence lists *249 a number of methods by which evidence may by authenticated or identified. Rule 901(b)(4) of the Federal Rules of Evidence specifically provides that authenticity may be established through "Appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances." Authorities interpreting the foregoing rule provide that a document may be ascribed to a particular individual by proof that it was discovered someplace that that person would have kept it and that its contents suggest that the individual prepared it. United States v. Calbas, 821 F.2d 887, 893 (2d Cir. 1987) (notebook recording drug transactions identified as belonging to co-conspirator where notebook found in hotel room abandoned by co-conspirator and contained name appearing in co-conspirator's personal telephone book); United States v. De Gudino, 722 F.2d 1351, 1355-1356 (7th Cir. 1983). In the instant case, circumstances support the notebook's authenticity. The notebook was found in petitioner's home, where petitioner resided with *250 a wife and two children. The police, in fact, found the notebook in petitioner's desk. The name "Dennis" appears in various parts of the notebook, accompanied by entries indicating that loans were made to Dennis in October at an interest rate of five percent per week, with interest payable weekly. For example, the following information appears on one page of the notebook: *716 10/13- Dennis 15,000 750 VIG 10/20-750 VIG 10/25-750 VIG 11/3 -- 750 VIG 11/9 -- 750 VIG 11/17-750 VIG 11/23-750 VIG 5250 12/1 -- 750 VIG Both Detective Lowe and petitioner testified that "VIG" refers to interest in the business of loansharking. The quoted portions of the notebook suggest a $ 15,000 loan to Dennis and interest payments of five percent of this amount, i.e., $ 750, paid approximately once a week. We do not view as coincidence that petitioner met Dennis Szwech in October 1983 and lent him money at terms the same as those disclosed by the notebook. Finally, Detective Lowe testified that during the search of petitioner's home, petitioner identified the notebook as his record. Petitioner's statement is not hearsay, but an admission by a party opponent. Fed. R. Evid. 801(d)(2). *251 [4]
Respondent has also adduced substantive evidence linking petitioner to bookmaking in 1983 and 1984. Detective Lowe testified that three or four times between October 1983 and February 1984 he saw petitioner carry brown envelopes of the sort which contained the policy slips from the trunk of his car to The Corner Restaurant. Detective Lowe also testified that during the search of petitioner's home, he asked petitioner about The Corner Restaurant. According to Detective Lowe, petitioner replied, "That's just a numbers joint; we don't serve any food in there and haven't in years." The policy slips found in petitioner's *252 home are further evidence of bookmaking. Detective Lowe identified the papers as bookmaking records; they contained names and numbers and were placed in envelopes. We do not agree with petitioner's assertion that evidence of the contents of the papers violates the best evidence rule. The Federal Rules of Evidence have codified the rule thus: "To prove the content of a writing, * * * the original writing, * * * is required, except as otherwise provided in these rules or by Act of Congress." Fed. R. Evid. 1002. An exception to the foregoing rule permits other evidence of the contents of a writing, e.g., testimony, when "All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith." Fed. R. Evid. 1004(1). The record discloses that the Suffolk County Police Department destroyed the policy slips after petitioner entered his guilty plea. Because the policy slips have been destroyed, testimony regarding their content does not violate the best evidence rule. We need not decide whether petitioner is correct in asserting that the police destroyed the *253 policy slips in bad faith. The applicable rule bars secondary evidence of lost or destroyed writings only when the proponent of the evidence has lost or destroyed the writings in bad faith. Respondent is the proponent of secondary evidence here, not Suffolk County, New York, and we see no basis for imputing the alleged bad faith conduct of the police to respondent. Our holding that respondent has adduced sufficient evidence linking the taxpayer with illegal, income-producing activities comports with our precedents. In Petzoldt, respondent supported deficiency determinations for 1983 and 1984 by producing an informant who testified about the taxpayer's drug transactions from 1980 through 1982, a notebook which implicated the taxpayer in transactions for the years in issue, and evidence of a substantial cash seizure in 1984. 92 T.C. at 690-691. Respondent reconstructed the taxpayer's income for 1983 and 1984 by adding the purchases of marijuana reflected in the notebook. For 1984, respondent also added the amount of cash seized and estimated living costs. 92 T.C. at 669. We held that the taxpayer had failed to rebut the presumption of correctness *254 that attached to the statutory notice because of the proof adduced by respondent. 92 T.C. at 691. Deficiency
Because respondent has adduced substantive evidence linking petitioner to loansharking and bookmaking in 1983 and 1984, petitioner bears the burden of going forward as well as the burden of proving that respondent's determination is incorrect. As noted, respondent determined that the $ 152,569 found in petitioner's safe represented income for 1983 and 1984 from illegal activities. Petitioner contends, however, that the money was not his, but belonged to his mother. Petitioner's mother apparently died on December 29, 1983. Petitioner contends that shortly after his mother's death, he and his sisters removed approximately $ 112,000 from beneath a step in his mother's home in Scarsdale, New York, and that he then placed the money in his safe. Petitioner's account is confirmed by his sisters, Mildred and Lisa, who testified that they gave the money to petitioner because they feared that Mildred's son, Michael, would otherwise steal it. The account is also confirmed by Stanley Behar, who testified that he was present when petitioner's *717 sisters counted the *255 money recovered from under the step, and by Warren Martin and Ines Vessio, petitioner's wife, who both testified that petitioner told them that he was holding money belonging to his deceased mother. Petitioner denies that the remainder of the money found in his safe represents income. For a number of reasons, we do not accept petitioner's account of the money found in his safe. First, we note that none of the witnesses who confirmed the account fairly may be characterized as unbiased. The witnesses who confirmed petitioner's story are his sisters, his wife, Mr. Behar and Mr. Martin. Petitioner's sisters and wife are, of course, close relatives. We observed Mr. Behar and Mr. Martin on the witness stand and do not consider their testimony credible. Additionally, both Mr. Behar and Mr. Martin are business associates of petitioner who were named in the indictment against petitioner and have been convicted of criminal usury. [5]
*256 Petitioner's mother kept and used safe deposit boxes in a bank. Given that fact, we find it unlikely that she would have kept a large sum of cash under a step. Even assuming that petitioner's mother harbored some distrust of banks that caused her to keep a cash hoard, we fail to understand why petitioner's sisters would have given the cash to petitioner instead of placing the funds in some income-producing account. We believe Lisa Vessio, as executrix of her mother's estate, would have exercised better judgment. Another reason for disbelieving petitioner's account is that it contradicts his statement to Detective Lowe on the day of the search that the seized cash had come from his mother's safe deposit box. The account also varies from a statement made by an accountant representing petitioner that the cash belonged to petitioner's father. The accountant possessed a power of attorney empowering him to represent petitioner before respondent with respect to petitioner's Federal income tax liability for 1983. Evidence of the accountant's statement is admissible as that of a party opponent's agent. Fed. R. Evid. 801(d)(2)(C). The state estate tax return for petitioner's *257 mother's estate does not, in our view, supply sufficient corroboration of petitioner's account. The return claims that the estate includes $ 153,000 in cash, but such statement was made during the pendency of the instant proceeding and did not result in tax liability. Additionally, we properly may infer from petitioner's repeated invocation of the privilege against self-incrimination that his account of the discovered funds is false. Petzoldt v. Commissioner, supra at 685-686 (although negative inference from invocation of privilege does not supply "substantive proof" of illegal activity that respondent must produce, once substantive evidence has been produced, the negative inference may discredit taxpayer's rebuttal). Petitioner produced no credible evidence that the remainder of the seized funds, $ 40,569, were other than income for the periods in issue. His wife testified that the money was held for petitioner's father, but we do not find her testimony credible. In support of his position that respondent's determination is incorrect, petitioner also argues *258 that the black notebook discloses a negative cash flow. Respondent's determination, however, is that petitioner had income from gambling and loansharking for the years in issue. Even if the loansharking produced a negative cash flow because petitioner's operation was shut down before loans were repaid, bookmaking could have generated the money respondent contends represents income. In fact, we view as reasonable respondent's conclusion that loansharking and bookmaking were simultaneously conducted, with cash flow from the latter activity supplying the capital with which to conduct the former activity. Respondent's determination that the seized cash represents income received during the period such activities were conducted appears equally reasonable. We do not deem it significant that the indictment charging petitioner with criminal usury states that petitioner acted in concert with other individuals. The record contains no evidence that petitioner held cash belonging to the others. Self-Employment Tax
Petitioner's only objection to the determination respecting self-employment tax under section 1401(a) is that respondent's determination of unreported illegal income *259 is incorrect. Since we have held to the contrary, we also hold that petitioner is liable for self-employment tax as determined by respondent. II. UNREPORTED INTEREST INCOME Respondent determined that petitioner received but failed to report $ 390 of interest income from Manufacturer's Hanover Trust in 1984. [6] On brief and at trial, petitioner's counsel represented that petitioner's mother and her *718 grandson, and not petitioner, had an account at the bank but used petitioner's social security number. At trial, however, petitioner offered no evidence to support such contention. As noted, the taxpayer normally bears the burden of going forward as well as the burden of proving respondent's determination incorrect. Rule 142(a); Welch v. Halvering, 290 U.S. at 115. *260 We have already discussed one exception to this general rule, i.e., that which provides that determinations of unreported illegal income are not presumed correct unless respondent has adduced substantive evidence linking the taxpayer to the illegal, income-producing activity. Some courts have extended the exception to determinations of unreported legal income, reasoning that "the obvious difficulties in proving the nonreceipt of income" necessitate a rule requiring respondent to make an initial showing. Anastasato v. Commissioner, 794 F.2d 884, 887 (3d Cir. 1986). In LaBow v. Commissioner, 763 F.2d 125 (2d Cir. 1985), affg. in part, revg. in part, and remanding in part a Memorandum Opinion of this Court, a determination that a taxpayer had received alimony payments was supported solely by the unsubstantiated testimony of an ex-spouse who claimed to have made the payments. The Second Circuit Court of Appeals, which would hear an appeal of the instant case, held that the determination was not entitled to a presumption of correctness. 763 F.2d at 132. The court reasoned as follows: S
But *261 while "the burden of proof may be said technically to rest" on Myrna, a taxpayer contesting the IRS's determination of income received, United States v. Janis, 428 U.S. 433, 441, 96 S.Ct. 3021, 3026, 49 L.Ed. 2d 1046 (1976), Myrna, unlike Ronald [ex-spouse], need not prove the IRS wrong; if Myrna can show the IRS made "a 'naked' assessment without any foundation whatsoever," id. (emphasis in original), then the burden shifts back to the IRS to prove her receipt of alimony income. * * *I 763 F.2d at 132. See also Schaffer v. Commissioner, 779 F.2d 849, 858 (2d Cir. 1985), affg. in part and remanding in part a Memorandum Opinion of this Court. In the instant case, petitioner has conceded his link to the determined interest income. His counsel represented that the interest-bearing account bore petitioner's social security number. Given this concession, we cannot characterize the determination as lacking "any factual basis." LaBow v. Commissioner, supra at 132. Because petitioner offered no evidence, not even his own testimony, refuting respondent's *262 determination of interest income, we must uphold the determination. III. FRAUD ADDITIONS Respondent seeks additions to tax for fraud under section 6653(b)(1) and (2) for 1983 and 1984. Respondent bears the burden of proving, by clear and convincing evidence, some underpayment attributable to fraud for each year. Petzoldt v. Commissioner, supra at 699; sec. 7454(a); Rule 142(b). Fraud must never be presumed or decided on the basis of suspicion. Beaver v. Commissioner, 55 T.C. 85, 92 (1970). Respondent does not meet his burden by relying upon a taxpayer's failure to disprove respondent's determination of a deficiency. Habersham-Bey v. Commissioner, 78 T.C. 304, 312 (1982); Otsuki v. Commissioner, 53 T.C. 96, 106 (1969); Pigman v. Commissioner, 31 T.C. 356, 370 (1958). We hold that respondent has failed to prove, by clear and convincing evidence, underpayments attributable to fraud for the years in issue. Although respondent has linked petitioner to loansharking and bookmaking in those *263 years and petitioner has not disproved respondent's determination of income for those years, respondent has not adduced clear and convincing evidence that the activities were indeed profitable in either of those years. While it is reasonable to infer that the money found in the safe represented income from the activities for the period in which the activities were conducted, we believe that such an inference falls short of clear and convincing evidence of income. [7] We cannot simply presume that petitioner's activities produced income in the years in issue and apply the fraud additions on that basis. [8]
*264 *719 Although we hold that, due to certain circumstances described above, petitioner's explanation for the seized cash does not satisfy his burden of refuting respondent's deficiency determination, petitioner's explanation does raise sufficient doubt to prevent respondent from meeting his burden of proving fraud by clear and convincing evidence in the instant case, considering his failure to present any accepted method of reconstructing petitioner's income [9] and the fact that petitioner's records from his loansharking activities showed a loss. In Jones v. Commissioner, 29 T.C. 601, 619 (1957), we were presented with an analogous situation and reasoned: just as the petitioner failed to show that the deposits in controversy did not in some substantial part represent income, the respondent has similarly failed to prove that the amounts in question were income, and the mere showing on his part that there was a failure to report as income items which insofar as shown by the evidence could in some part have been either income or nonincome items does not establish that, by reason of the omission of such items, the returns were false and fraudulent with intent to evade tax. *265 * * * See also Anastasato v. Commissioner, supra at 888-889. We take seriously the statutory admonition that clear and convincing evidence support a finding of fraud. We therefore decline to find fraud on the basis of inferences in the instant case. IV. SECTION 6661 ADDITIONS Respondent seeks additions to tax under section 6661. That provision imposes an addition to tax for the "substantial understatement" of tax liability. Section 6661(b) defines a substantial understatement as one exceeding the greater of 10 percent of the correct tax or $ 5,000. Petitioner offers no argument as to why additions under section 6661 should not be imposed in the event we uphold deficiencies meeting the statutory threshold. Consequently, we hold that the additions apply if the Rule 155 computation which we will direct discloses deficiencies that warrant imposition of *266 the addition. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. * 50 percent of the interest on $ 65,103 ** 50 percent of the interest on $ 7,783↩
2. Respondent does not contend that the blue notebook also evidences petitioner's loansharking, perhaps because police believed that the notebook belonged to petitioner's father.↩
3. E.g., Segers v. Commissioner, T.C. Memo. 1990-28; Constable v. Commissioner, T.C. Memo. 1989-554; Pring v. Commissioner, T.C. Memo. 1989-340↩.
4. At trial, petitioner invoked the Fifth Amendment privilege against self-incrimination in response to questions regarding the black notebook. We do not, however, rely upon any negative inference from such invocation in holding that respondent has met his burden of linking petitioner to illegal, income-generating activity. Petzoldt v. Commissioner, 92 T.C. 661, 685-686↩ (1989).
5. We consider respondent's motion to have the testimony of Mr. Behar and Mr. Martin stricken as moot, because we lend no credence to the testimony of either witness.↩
6. Respondent also determined that petitioner received but failed to report dividend and interest income from Dreyfus Liquid Assets and Ridgewood Savings Bank, respectively, but respondent conceded these items in his opening brief.↩
7. Respondent cites no authority for the proposition that the burden of proving an underpayment is satisfied solely by evidence of seized cash, nor has our own research disclosed any such authority. In cases in which respondent has based a deficiency on seized cash, respondent has not determined the fraud addition. E.g., Segers v. Commissioner, T.C. Memo. 1990-28; Constable v. Commissioner, T.C. Memo. 1989-554; Pring v. Commissioner, T.C. Memo. 1989-340; Graham v. Commissioner, T.C. Memo. 1987-410. Moreover, in cases involving seized cash in which we have held that the fraud addition applies, respondent used some accepted indirect method of proving income. Petzoldt v. Commissioner, 92 T.C. at 694 (cash expenditures method used); Mack v. Commissioner, T.C. Memo. 1989-490 (cash expenditures method used); Bonacci v. Commissioner, T.C. Memo. 1989-289↩ (net worth method used). By citing the foregoing examples we do not mean to decide that respondent can never meet his burden of proving an underpayment by relying solely on evidence of seized cash. 8. While it may be reasonable to presume that bank deposits represent income for the period during which the deposits are made (see Marghzar v. Commissioner, T.C. Memo. 1989-609↩), in the instant case, the connection between the seized cash and the years in issue is not as clear.
9. See footnote 7, supra↩.