THOMAS H. SHRIVER, PETITIONER v. COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT

Docket No. 2235–83.    Filed July 1, 1985.

*Michael E. Marr*, for the petitioner.
*John F. Dean*, for the respondent.

STERRETT, *Chief Judge*: By notice of deficiency dated November 8, 1982, and by amended answer, respondent determined a deficiency in Federal income taxes for the years ended Decem-

1

ber 31, 1977, and December 31, 1978, and additions to tax under sections 6653(b) and 6654, I.R.C. 1954, as follows:

| | | Addition to tax under | |
| Year | Deficiency | Sec. 6653(b) | Sec. 6654 |
|------|-----------|--------------|-----------|
| 1977 | $1,394,781.10 | $697,390.55 | $49,877.37 |
| 1978 | 1,394,911.30 | 697,455.65 | 44,637.16 |

After concessions[1] the issues before us are: (1) Whether the notice of deficiency was arbitrarily issued, and (2) whether respondent's determination of petitioner's tax liability was incorrect.

### FINDINGS OF FACT

Petitioner Thomas H. Shriver resided in Des Plaines, Illinois, at the time of filing his petition in this case. He did not file Federal income tax returns for the taxable years ended December 31, 1977, and December 31, 1978.

During 1977 and 1978, while in graduate school, petitioner earned income from the sale of methamphetamine, a controlled substance.[2] The methamphetamine was sold in 10-gram packets for $700, and petitioner sold a total of 8 pounds of the drug to four individuals, one of whom was a Government informant. During all but 4½ months of 1977 and 1978, Michael Ramano was petitioner's partner in this profitable business venture.[3]

In his statutory notice of deficiency, respondent determined that petitioner had unreported income for 1977 and 1978 totaling $4,028,036 from the sale of methamphetamine. Respondent's calculation of the amount of unreported income was based upon information supplied by a Government informant[4] to the Drug Enforcement Administration (hereinafter referred to as DEA).

---

[1]On brief and at trial, petitioner conceded the addition to tax under sec. 6653(b). Petitioner, however, failed to address the issue of the addition to tax pursuant to sec. 6654 either at trial or on brief, and thus, we assume that he also conceded that issue. Even if petitioner did not concede the sec. 6654 issue, we find that he did not carry his burden of proof on that question.

[2]Petitioner's activity did not go unnoticed by the authorities. He was indicted and pled guilty to the charge of conspiring to distribute methamphetamine.

[3]From May 1977 to September 1977, Michael Ramano served time in prison at Eglin Air Force Base in Florida for his conviction of the crime of conspiring to distribute heroin.

[4]The informant, who was a distributor of drugs, arranged and made purchases of methamphetamine from petitioner while under the surveillance of agents of the DEA.

OPINION

Petitioner maintains that respondent's determination was arbitrary and erroneous in that it was based upon inadmissible hearsay declarations of a Government informant, who was not called to testify at trial. Thus, petitioner argues that respondent had the burden of going forward with the evidence to show the correct amount of his income.

Ordinarily, a presumption of correctness attaches to a statutory notice of deficiency, which places upon petitioner the burden of proof and the burden of going forward with the evidence to show the correct amount of his income. *Welch v. Helvering*, 290 U.S. 111 (1933). If, however, petitioner demonstrates that the statutory notice is arbitrarily excessive or without foundation, then the burden of going forward with the evidence shifts to respondent. *Helvering v. Taylor*, 293 U.S. 507 (1935); *Llorente v. Commissioner*, 74 T.C. 260, 264 (1980), affd. in part and revd. and remanded in part 649 F.2d 152 (2d Cir. 1981).

In requesting this Court to find a statutory notice arbitrary, petitioner is asking the Court to go behind the statutory notice. As a general rule, this Court will not look behind a statutory notice to examine the evidence used by respondent in making his determination. *Dellacroce v. Commissioner*, 83 T.C. 269, 280 (1984); *Riland v. Commissioner*, 79 T.C. 185, 201 (1982); *Llorente v. Commissioner*, *supra* at 264; *Jackson v. Commissioner*, 73 T.C. 394, 400 (1979); *Greenberg's Express, Inc. v. Commissioner*, 62 T.C. 324, 327 (1974); *Suarez v. Commissioner*, 58 T.C. 792, 813 (1972). In this context, we have observed that "the Commissioner's determination may often rest upon hearsay or other inadmissible evidence, and we know of no rule of law calling for a review of the materials that were before the Commissioner in order to ascertain whether he relied upon improper evidence." *Rosano v. Commissioner*, 46 T.C. 681, 687 (1966).

On rare occasions, however, this Court has recognized an exception to the above-mentioned rule and has looked behind the notice of deficiency. Those cases involved unreported illegal income where respondent introduced no direct or substantive evidence, but rested on the presumption of correctness, and the taxpayer challenged the notice of deficiency. *Dellacroce v. Commissioner*, *supra*; *Jackson v. Commissioner*,

*supra*. We hold that the instant case does not fall within this narrow exception, since there is substantive evidence linking petitioner to a tax-generating activity during the years in issue. Petitioner testified and stipulated to the fact that he earned income from the sale of drugs during 1977 and 1978. He was also convicted of the crime of dealing in drugs during this period. In addition, one of the individuals to whom petitioner sold drugs testified at trial that he purchased 2 pounds of methamphetamine from petitioner in 1977. Respondent clearly did not rest merely on the presumption of correctness in issuing his notice of deficiency. Consequently, we will not look behind the statutory notice in the instant case, and petitioner bears the burden of proving respondent's determination incorrect.

Having found that the notice of deficiency was not arbitrarily issued, we must decide whether respondent's determination was incorrect. Neither party disputes the fact that petitioner owes taxes on unreported income earned in 1977 and 1978. They do disagree, however, with respect to the amount of income earned over the periods in question and the resultant tax liability.

Respondent determined that petitioner earned in excess of $4 million from the sale of methamphetamine during 1977 and 1978. His determination was based upon a DEA report that was written up by an agent of the DEA in his official capacity. The report reflected statements made by a Government informant to the agent, and included a statement, allegedly made by petitioner to the informant, that petitioner only had 1 pound left of the 75 pounds of methamphetamine he had made. Based upon this report, and in particular petitioner's alleged statement to the informant, respondent determined that petitioner had sold 75 pounds of the controlled substance during the years in issue, generating more than $4 million in income.

At trial, petitioner timely objected to the admission of this particular DEA report, as well as related DEA reports, on the grounds that they were hearsay[5] and not admissible under any

---

[5]Rule 801(c), Federal Rules of Evidence, defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Generally, hearsay is inadmissible as evidence. Fed. R. Evid. 802 provides that—

"Hearsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress."

of the hearsay exceptions. Respondent claims that these documents are admissible in evidence under rules 803(6) and 803(8), Federal Rules of Evidence. Alternatively, respondent maintains that petitioner's statement, that only 1 pound remained of the 75 pounds of methamphetamine he had made, is admissible in evidence as an admission because it is a nonhearsay statement.

We begin by addressing respondent's contention that the DEA reports are admissible in evidence under Fed. R. Evid. 803(6). This provision allows a business record to be admitted as evidence of the truth of the matters stated if it was made and kept in the regular course of a regularly conducted business activity.[6] As a general rule, the document must either have been made by a person who had firsthand knowledge of the facts recorded, or have been made on the basis of information supplied by an individual who had firsthand knowledge, whose business it was to make such a report. The requirement that the information recorded be based upon firsthand observations of an individual acting in his regular course of business is necessary to ensure that the business records are trustworthy. *United States v. Lieberman*, 637 F.2d 95, 100 (2d Cir. 1980); *United States v. Smith*, 521 F.2d 957, 964 (D.C. Cir. 1975); *United States v. Burruss*, 418 F.2d 677, 678–679 (4th Cir. 1969).

The DEA reports fail to satisfy the business records exception to hearsay statements. The document would not be admissible since we find that it lacks trustworthiness. The informant was a distributor of drugs and we question the circumstances and motives that led to his assisting the Government in its surveillance of petitioner's activities. We also note that, although the informant was present at petitioner's trial, respondent refused to call him to testify. His failure to do so was based, not on the desire to protect the informant's

---

[6]Fed. R. Evid. 803(6) provides the following exception to the hearsay rule:

"Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit."

identity, as that was disclosed at trial, but rather on the fact that, according to respondent, the informant could not recollect any of the events that had transpired and would have testified to that effect.

Respondent also argues that the documents should be admitted in evidence under Fed. R. Evid. 803(8). We again disagree. That provision is another exception to the hearsay rule and permits the admission of public records and reports in evidence if certain criteria are met, unless the sources of information or other circumstances indicate lack of trustworthiness.[7] We find that this exception does not apply since we have determined that the sources of information, the informant's statements, are not trustworthy. Respondent maintains that, with respect to the issue of trustworthiness, petitioner bears the burden of proof, which he has failed to carry. We agree that petitioner has the burden of showing that a public record or report is inadmissible because its sources of information or other circumstances indicate a lack of trustworthiness. *Kehm v. Procter & Gamble Mfg. Co.*, 724 F.2d 613, 618 (8th Cir. 1983); *Baker v. Elcona Homes Corp.*, 588 F.2d 551, 558 (6th Cir. 1978), cert. denied 441 U.S. 933 (1979); *Zenith Radio Corp. v. Matsushita Elec. Ind. Co.*, 505 F. Supp. 1125, 1148 (E.D. Pa. 1980). However, we have found that the evidence established that the informant's statements were not trustworthy. Even though the evidence came into the record through respondent's witnesses, we see no reason why respondent should not be allowed to prove petitioner's case with respect to this issue if he so chooses.

Lastly, respondent argues that the statements made by petitioner to the informant, which were recorded on the DEA report, are admissions which are nonhearsay and thus admissible in evidence. The DEA report reflects what the informant told the agent with respect to petitioner's alleged statements,

---

[7]Fed. R. Evid. 803(8) provides the following exception to the hearsay rule:

"Public records and reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness."

so in essence, we are dealing with an admission within hearsay.

Pursuant to Fed. R. Evid. 801(d)(2)[8] an admission is nonhearsay, rather than an exception to the hearsay rule. Consequently, hearsay within an admission does not fall strictly within Fed. R. Evid. 805, which governs "hearsay included within hearsay."[9] Even so, the law has stated that the requirements of Fed. R. Evid. 805 must be satisfied in order for hearsay within an admission to be admissible in evidence. *United States v. Lang*, 589 F.2d 92, 98–99 (2d Cir. 1978); *Zenith Radio Corp. v. Matsushita Elec. Ind. Co.*, 505 F. Supp. 1190, 1266 (E.D. Pa. 1980). See also C. McCormick, Evidence, sec. 324.3, at 912 (3d ed. 1984). Since the DEA reports are not admissible in evidence for the reasons previously stated, it follows that Fed. R. Evid. 805 cannot be satisfied in the instant case, and thus, petitioner's statements allegedly made to the informant also are not admissible in evidence.[10]

With respect to the question of how much income petitioner earned during 1977 and 1978, petitioner argues that he had income in the amount of $40,000, which was generated from the sale of methamphetamine. He testified at trial that he sold 8 pounds of the controlled substance at a price of $700 per 10-gram packet, and that he had purchased the drug for $1,500 an ounce. His testimony concerning the quality of methamphetamine sold and the price at which he sold it was supported by other evidence in the record. One of respondent's witnesses testified that he bought 2 pounds of the drug from petitioner during the periods in issue. Since petitioner had sold the controlled substance to four individuals, we find that the evidence supports his contention that he sold 8 pounds.

---

[8]Fed. R. Evid. 801(d) provides that a statement is not hearsay if—

"(2) Admission by party-opponent. The statement is offered against a party and is (A) his own statement, in either his individual or a representative capacity or (B) a statement of which he has manifested his adoption or belief in its truth, or (C) a statement by a person authorized by him to make a statement concerning the subject,or (D) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship, or (E) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy."

[9]Fed. R. Evid. 805 provides that—

"Hearsay included within hearsay is not excluded under the hearsay rule if *each part* of the combined statements conforms with an exception to the hearsay rule * * *." [Emphasis added.]

[10]Even if the DEA reports were admissible as evidence, when weighed against the other evidence in the record, our decision would remain unchanged.

Further, other evidence properly admitted into the record corroborated petitioner's testimony that he sold methamphetamine for $700 per 10-gram packet. We also note that while petitioner and Michael Ramano were partners in this profitable business venture, petitioner failed to present any credible evidence with respect to their respective shares of income from the sale of the controlled substance. Since Michael Ramano was in prison for 4½ months during which he did not participate in the business venture, and since we cannot decipher from the record how much methamphetamine was sold during that period, we are not in a position to determine his share of the income generated from the drug sales. Having failed to satisfy his burden of proof on this issue, we attribute all income generated from such sales to petitioner.

Petitioner's testimony with respect to his contention that he had purchased his supply of methamphetamine for $1,500 an ounce is not supported by the record. He testified that a person named "Paul" had supplied him with the controlled substance. Even though petitioner allegedly had dealt with this individual during 1977 and 1978, he could not remember anything with respect to the supplier, such as his last name or address. Furthermore, his partner Michael Ramano testified that the supplier's name was Tom, not Paul. Based upon the incomplete and inconsistent testimony, we find that petitioner manufactured the methamphetamine he sold, and did not purchase any of it from a supplier. No deduction for cost of goods sold is permitted because petitioner failed to establish the cost incurred in manufacturing the drug. Accordingly, we hold that petitioner had income in the amount of $254,240[11] from the sale of methamphetamine during 1977 and 1978.

*Decision will be entered under Rule 155.*

---

[11]This amount was calculated as follows. There are approximately 454 grams in a pound, and petitioner sold 10 grams of methamphetamine for $700, or for $70 per gram.

$70 × 454 = $31,780 for a pound of methamphetamine.

Since petitioner sold 8 pounds of methamphetamine, the income he generated from such sales totaled $254,240 (8 × $31,780).