CHARLES H. GILL, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gill v. Commissioner
Docket No. 2593-83
United States Tax Court
T.C. Memo 1990-91; 1990 Tax Ct. Memo LEXIS 91; 58 T.C.M. (CCH) 1501; T.C.M. (RIA) 90091; February 26, 1990
Brian R. St. James, for the petitioner. James A. Kutten, for the respondent. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHEILDS, Judge: Respondent determined a deficiency in and additions to petitioner's Federal income tax for 1979, as follows: Additions to Tax
Deficiency
Sec. 6651(a)(1) [1]
Sec. 6653(a)
$ 21,572
$ 5,393
$ 1,079
Respondent has conceded the addition to tax under section 6651(a)(1). The issues remaining for decision are: (1) whether respondent's determination of net income in the amount of $ 54,000 from the sale of cocaine was arbitrary and capricious; (2) whether petitioner received income from the sale of cocaine in 1979 and, if so, the amount of net income received from such activity; and (3) whether petitioner is liable for the addition to tax for negligence under section 6653(a). FINDINGS OF FACT Some of the facts have *93 been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner was residing in the Federal Penitentiary at Terre Haute, Indiana, when he filed his petition in this case. But on July 21, 1979, he was residing with his mother in a two-story brick dwelling located at 2922 and 2922A University, St. Louis, Missouri. The dwelling had been under surveillance for about two weeks by Detective Peter Gober and other officers with the St. Louis Metropolitan Police Department. During the surveillance Mr. Gober had observed persons with previous narcotic convictions entering the residence and had been informed by a confidential informant that purchases of cocaine had been made on the premises by the informant from petitioner. With this information a search warrant for the dwelling was obtained from Judge Lackland Bloom of the St. Louis Circuit Court for Criminal Causes. With the search warrant, Detectives Gober and Joseph Mokwa, accompanied by other police officers, entered the premises shortly after noon on July 21, 1979; found petitioner in a bedroom on the second floor; and saw him place a briefcase under his *94 bed. Upon opening the briefcase the officers observed that its contents included a large amount of currency and a small zipper purse containing five cellophane bags of white powder which they believed to be cocaine. At that point Detective Gober placed petitioner under arrest and advised him of his constitutional rights under Miranda v. Arizona, 384 U.S. 436 (1966). Petitioner acknowledged that he understood his rights. In a subsequent search of the dwelling the police officers found strainers, measuring spoons, a scale, thousands of one and two gram vials and other evidence of a drug operation. They also found several firearms as well as numerous items of other personal property, including jewelry, cameras, television sets, glassware, china and both gold and silver coins. The officers suspected that the personal property was stolen because some of it still bore price tags. However, when questioned by Mr. Gober petitioner stated that he had not stolen any of the items but many of them had been received by him in trade for drugs. The items of personal property subsequently determined to be stolen were valued at $ 15,000 by their owners. During questioning by *95 Mr. Gober, petitioner also admitted that the currency in the amount of $ 28,000 in the briefcase was his; that the white powder in the five cellophane bags was cocaine; that he had paid $ 11,000 for the cocaine; and that in accordance with his usual practice he had intended to dilute and sell the cocaine in quantities from grams to ounces at a profit of $ 2,000 per ounce. An analysis by a chemist for the St. Louis Police Department revealed that the five bags of powder was in fact cocaine in the following quantities and purity: (1) 27.00 grams gross weight -- 48.5% pure (2) 27.12 grams gross weight -- 57.4% pure (3) 24.13 grams gross weight -- 99.5% pure (4) 27.08 grams gross weight -- 69.5% pure (5) 27.34 grams gross weight -- 41.4% pure In view of the amount of drugs seized, the police officers contacted a special agent of the Drug Enforcement Administration (DEA) who assisted in the investigation and interview of petitioner and took possession of the $ 28,000. On July 26, 1979, petitioner was indicted in the United States District Court for the Eastern District of Missouri for knowingly and intentionally possessing with intent to distribute approximately five ounces *96 of cocaine. By letter dated August 9, 1979, the District Director of Internal Revenue at St. Louis notified petitioner that a termination assessment of income tax in the amount of $ 21,572 was being made against him under section 6851 for the taxable year ended July 21, 1979. The letter also informed petitioner that he was entitled under section 7429 to have the assessment administratively and judicially reviewed. No such review was ever sought by petitioner. On the date of the termination assessment respondent caused a notice of levy to be served on DEA. In response to the levy respondent received $ 21,572 from the DEA, which was applied to the termination assessment. Petitioner waived a jury trial in the criminal case in the United States District Court and the case was submitted to Judge H. Kenneth Wangelin as a fully stipulated matter. In a Memorandum Opinion dated January 3, 1980, Judge Wangelin concluded as follows: Accordingly, based upon the above * * *, the Court finds that the defendant Charles H. Gill did knowingly and intentionally possess five ounces of cocaine on July 21, 1979 in the Eastern District of Missouri. The Court further finds that the defendant *97 Gill possessed the five ounces of cocaine with the intent to distribute and not for personal use. See United States v. Blake, 484 F.2d 50 (8th Cir. 1973). Therefore, the Court finds defendant Charles H. Gill guilty beyond a reasonable doubt of violation of Title 21, United States Code, Section 841(a)(1) as charged in the indictment. A Judgment and Commitment Order was entered by Judge Wangelin on February 4, 1980, sentencing petitioner to 25 years in prison to be followed by a Special Parole Term of 10 years, and a fine of $ 20,000. Respondent's notice of deficiency for 1979, which was not mailed to petitioner until November 2, 1982, was timely because petitioner did not file an income tax return for 1979. In the notice respondent determined that during 1979 petitioner was involved in the sale of cocaine from which he received gross sales in the amount of $ 108,000, computed as follows: U.S. Currency
$  28,000
Cocaine
11,000
Personal property
15,000
Total
$  54,000
Percent of profit - 100%
54,000
Gross sales
$ 108,000
Respondent also determined that in 1979 petitioner had cost of goods sold in the amount *98 of $ 54,000 and an exemption of $ 1,000, which resulted in a taxable net income of $ 53,000 and a total income tax liability of $ 21,572. OPINION In effect petitioner's primary contention is that respondent's determination of his tax liability is arbitrary and excessive and consequently respondent has the burden of proof, or at least the burden of going forward with the evidence in this case. While it is true that in those cases where respondent's determination is found to be arbitrary and excessive the burden of going forward with the evidence may shift to respondent, [Helvering v. Taylor, 293 U.S. 507 (1935)], it is well settled that with this exception and the few instances none of which are present in this case where the burden of proof is placed on respondent either by statute or our rules the burden of proof and the burden of going forward with the evidence is upon petitioner. Dellacroce v. Commissioner, 83 T.C. 269, 280 (1984). To determine whether a deficiency is arbitrary and excessive, it is usually necessary to look behind the deficiency notice, which is something we are reluctant to do. Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 328 (1974). *99 However, in spite of our reluctance we have done so when respondent in cases involving unreported income from illegal sources introduces no substantive evidence, but merely rests on the presumption that his determination is correct. Shriver v. Commissioner, 85 T.C. 1, 3-4 (1985). But here respondent did not rely on the presumption of correctness. Instead he placed in the record evidence from which we have found the following: (1) That after satisfying a judge that petitioner was selling cocaine, detectives of the local police department obtained a warrant to search petitioner's residence; (2) that there they found petitioner in possession of a briefcase containing $ 28,000 in cash and five packages of white powder which was later determined to be cocaine; (3) that in a search of the premises the officers also found numerous items and substances known to be used in the dilution and distribution of cocaine, as well as several firearms and various other items of personal property suspected of having been stolen; (4) that after being advised of his constitutional rights, petitioner admitted to the officers that the cash, cocaine, and the personal property found in *100 the search belonged to him, that he had paid $ 11,000 for the five ounces of cocaine, that he had received many items of the personal property in trade for drugs, and that his usual profit from the sale of cocaine was $ 2,000 an ounce. We have also found that petitioner was subsequently indicted and convicted in the District Court of possessing the five ounces of cocaine with the intent to distribute the same. It is apparent, therefore, that respondent's determination that during 1979 petitioner was engaged in the sale of cocaine was not arbitrary. Shriver v. Commissioner, 85 T.C. at 3. Next petitioner argues that respondent's use of a percentage of markup in his determination of petitioner's income is erroneous. He further contends that if the use of a percentage of markup is permissible its use would require that the value of the cash, cocaine, and personal property be reduced by 50 percent in order to arrive at net income. This argument is fallacious, however, because (1) respondent's determination of petitioner's income is not based upon a percentage of markup and (2) the argument is contrary to petitioner's admissions. Instead of a percentage of markup *101 respondent determined petitioner's net income from the assets which petitioner had on hand on July 21, 1979. In other words, at the time of his arrest on July 21, 1979, he had in his possession and admitted that he owned $ 28,000 in cash, five ounces of cocaine which cost $ 11,000, and certain stolen personal property which he had received in exchange for drugs. Under the circumstances surrounding his arrest, as set forth in detail in our findings, respondent's conclusion that these items represented current receipts from the sale of cocaine was reasonable. Respondent's conclusion that the stolen personal property in petitioner's possession had a total value equal to the $ 15,000 placed on such articles by the rightful owners was also reasonable. We conclude, therefore, that respondent's determination that petitioner's net income in 1979 from cocaine sales was $ 54,000 ($ 28,000 in currency plus $ 11,000 in cocaine and $ 15,000 in personal property) was not arbitrary or excessive. In fact it is well within the reconstruction of income by "any reasonable means" allowed respondent where as here the taxpayer has failed to maintain or produce any books and records. United States v. Johnson, 319 U.S. 503, 517-518 (1943); *102 and Jackson v. Commissioner, 73 T.C. 394, 403 (1979). At trial, petitioner testified that the cocaine did not belong to him and that the $ 28,000 in currency and the personal property had been accumulated by him for the most part in prior years. He was unable, however, to produce any books, records, or other evidence in support of his testimony. Consequently, we are unable to consider his testimony, which is directly contrary to his admissions at the time of his arrest, as credible or that it refutes respondent's determination of his income in any respect. Respondent also determined that petitioner is liable for the addition to tax for negligence under section 6653(a). As used in section 6653(a) negligence "is lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Neely v. Commissioner, 85 T.C. 934, 947 (1985), quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), cert. denied 389 U.S. 1044 (1968). Respondent's determination of negligence is presumed to be correct and petitioner has the burden of proving that it is erroneous. Tomburello v. Commissioner, 86 T.C. 540, 547 (1986), *103 affd. without published opinion 838 F.2d 474 (9th Cir. 1988); Luman v. Commissioner, 79 T.C. 846, 860-861 (1982); Rule 142(a). In this case there are several facts which clearly show that petitioner was negligent; namely, (1) he failed to file an income tax return for 1979; (2) he dealt in cash; and (3) he failed to maintain records to permit verification of his income and expenses, as required by section 6001 and section 1.6001-1, Income Tax Regs. See Schroeder v. Commissioner, 40 T.C. 30, 34 (1963). Furthermore, the fact that he was engaged in an illegal activity does not exempt him from the record keeping requirements of section 6001. See Guercio v. Commissioner, T.C. Memo. 1982-28. Even though the entire deficiency has been satisfied in this case by respondent's levy on the DEA, a statutory deficiency remains because the termination assessment is not taken into account in computing the deficiency. Sections 6211(b)(1) and 6851(b). Thus the addition to tax for negligence is still applicable. To reflect the foregoing and respondent's concession, Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code as amended and in effect for 1979, except as otherwise noted. All rule references are to the Tax Court Rules of Practice and Procedure.↩