MAUREEN M. KETTLES, Petitioner, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kettles v. Commissioner
Docket No. 4375-91S
United States Tax Court
1992 Tax Ct. Memo LEXIS 449; June 29, 1992, Filed *449 Decision will be entered under Rule 155. For Maureen M. Kettles, pro se. For Respondent: William F. Halley and Frank Racaniello. PANUTHOS
PANUTHOS
PANUTHOS, Chief Special Trial Judge: This case was heard pursuant to the provisions of section 7463. [1] Respondent, in separate notices of deficiency dated December 13, 1990, determined deficiencies for the taxable years 1987 and 1988 in the amounts of $ 648 and $ 623, respectively. Respondent also determined additions to tax for negligence (1) for 1987 pursuant to section 6653(a)(1)(A) in the amount of $ 69 and section 6653(a)(1)(B) in the amount of 50 percent of the interest due on the deficiency and (2) for 1988 pursuant to section 6653(a)(1) in the amount of $ 31. The issues for decision are: (1) Whether petitioner received unreported tip income and (2) whether petitioner is liable for the additions *450 to tax for negligence. Some of the facts are stipulated and are incorporated in our findings herein. At the time of filing the petition herein, petitioner resided at Brigantine, New Jersey. During the years in issue petitioner was employed as a beverage/cocktail server (cocktail server) for Bally's Park Place Hotel Casino in Atlantic City, New Jersey (Bally's). Bally's offered complimentary alcoholic and nonalcoholic beverages to game table and slot machine patrons. Cocktail servers were assigned to serve drinks to gamblers at the game tables and slot machines (slots). After taking a drink order from a customer, the cocktail server obtained the drink from the service bartender and delivered it to the customer. Cocktail servers generally tipped the service bartender 10 percent of the tips received by the cocktail server. Cocktail servers also tipped the barporters $ 2 per shift. During 1987 and 1988, petitioner was assigned to serve cocktails in the slots area. Cocktail servers for the slots were assigned to cover different areas of the casino on a rotating basis. During 1987 petitioner worked 1,155.39 hours on the day shift and 66.38 hours on the swing shift. During 1988 *451 petitioner worked 1,186.08 hours on the day shift and 55.28 hours on the swing shift. During the years in issue, petitioner suffered from severe osteoarthritis and received regular medical treatment including cortisone injections in her feet every other week. Petitioner experienced severe pain when walking and eventually required foot surgery. Petitioner moved sometime in 1987 or 1988. In January 1989, petitioner suffered a heart attack. For 1987 petitioner reported to Bally's the amount of $ 2,845 as tips received. Said amount was reflected on the Form W-2 issued to petitioner. On her 1987 Federal income tax return, petitioner reported additional tip income in the amount of $ 5,209. Thus, the total tip income reported for 1987 was $ 8,054. For 1988 petitioner reported to Bally's the amount of $ 2,855 as tips received. On her 1988 Federal income tax return, petitioner reported additional tip income in the amount of $ 5,506. Thus, the total tip income reported for 1988 was $ 8,361. In the notices of deficiency respondent determined that petitioner received total tip income for 1987 and 1988 in the amounts of $ 12,071.09 and $ 12,487.34, respectively. Thus, respondent's *452 determination of unreported tip income for 1987 and 1988 is $ 4,017.09 and $ 4,126.34, respectively. Respondent's determination is based on a formula derived from a tip income project conducted at casinos in Atlantic City, including Bally's. Surveillance of cocktail waitresses at various Atlantic City casinos was performed by agents of the Internal Revenue Service (IRS). A sampling plan was developed whereby a particular cocktail waitress was observed for a 30-minute period on randomly selected dates and shifts. Detailed instructions were provided to the IRS agents to control the sampling. Immediately following the 30-minute observation period, the IRS agent would record the amount of tips he saw being given to the particular waitress. If the agent was unsure of the denomination of a particular tip the instructions provided that a conservative approach should be taken and the agent should assume the lowest likely denomination. (E.g., if a bill were given, it would be considered $ 1 unless specifically identified.) During 1987 and 1988, over 1,000, 30-minute shift observations were conducted by agents of the IRS. As a result of the surveillance program, a surveillance rate *453 was developed as follows: [2]
Day
Swing
Graveyard
1987
$ 11.35
$ 11.35
$ 6.79
1988
11.39
14.88
10.63
The data compiled from the surveillance was provided to the IRS examination division. The examination division, utilizing the applicable surveillance rate, the employee hours (including adjustments for nontipped hours per shift), and *454 payouts to service bartenders and barporters, developed a tip rate per hour for cocktail waitresses and applied it to petitioner as follows: 1987
Day
Swing
Total
Net hours
1155.39
66.38
Tip rate
X9.88
X9.88
Corrected tip income
$ 11,415.25
$ 655.83
$ 12,071.08
Reported tips (Per Return)
8,054.07
Unreported tip income
$  4,017.01
1988
Day
Swing
Total
Net Hours
1186.08
55.28
Tip Rate
X9.92
X13.05
Corrected Tip Income
$ 11,765.91
$ 721.40
$ 12,487.29
Reported Tips (Per Return)
8,361.00
Unreported tip income
$  4,126.29
There is no doubt that tips received are includable in gross income as compensation for services rendered. Sec. 61(a); Killoran v. Commissioner, 709 F.2d 31 (9th Cir. 1983), affg. T.C. Memo. 1981-659; sec. 1.61-2(a)(1), Income Tax Regs. It is well established that, if a taxpayer keeps no records of tip income or the records do not clearly reflect tip income, respondent may compute income to clearly reflect income. Sec. 446(b); Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965). We have previously accepted the use of formulas in the *455 reconstruction of tip income. Cracchiola v. Commissioner, 643 F.2d 1383 (9th Cir. 1981), affg. per curiam T.C. Memo. 1979-3; Biddle v. Commissioner, T.C. Memo. 1989-397. Petitioner testified that she maintained contemporaneous diaries for the years in issue but that, as a result of a move sometime in 1987 or 1988, the diaries were lost. We do not find petitioner's testimony to be credible on this point. Petitioner failed to specify when she moved, when the diaries were lost, and, most importantly, whether the diaries were used in the preparation of her 1987 and 1988 Federal income tax returns. Even if we assume that petitioner utilized a diary in preparation of her 1987 return, the same assumption could not apply to 1988 since this return was not prepared and filed until 1989 which would be subsequent to the date petitioner moved and lost the alleged diaries. Additionally, petitioner offered no specific documentation or testimony to attempt to reconstruct the diaries. Thus, petitioner failed in her burden of proof to establish that she maintained accurate records reflecting her tip income. Petitioner failed to present *456 additional evidence as to how her tips were computed or in what way respondent's determination was erroneous. The only evidence offered was that petitioner had medical problems during the years in issue which caused her to receive less in tips than was reflected in respondent's formula. While respondent's determination is presumptively correct, [3] we find that petitioner's medical condition likely caused her to be less efficient and receive less in tips than the standard cocktail waitress reflected in respondent's tip rate. Accordingly, we hold that the total tips determined by respondent should be reduced by 10 percent to account for petitioner's medical condition. Respondent's determination is otherwise sustained. *457 Petitioner has the burden of proving that the additions to tax for negligence do not apply. Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972). Petitioner's failure to maintain accurate records and her failure to report a portion of her total tip income in 1987 and 1988 were due to negligence. Respondent is sustained on this issue. Reviewed and adopted as the report of the Small Tax Case Division. Based on the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code in effect for the tax years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. At trial, respondent offered into evidence an expert report prepared by Doyle H. Harris. The report was offered to support the methodology of the surveillance program and the data compiled therein. While respondent complied with Rule 143(f) in providing a copy of the report to the Court prior to trial, respondent did not present Mr. Harris or any other witness to support the report. Petitioner objected to the admission of the report. The Court limited admissibility of the report to the extent that it was admitted not for the truth or accuracy of the contents, but only that respondent's agents relied on the surveillance rate to recompute petitioner's tip income.↩
3. Petitioner has not argued, nor do we find, that respondent's notice of deficiency was arbitrary and capricious. While respondent's expert's report was not admitted into evidence as a foundation for the tip surveillance rate, such evidence was not necessarily required under these circumstances. As a general rule, we will not look behind a statutory notice to examine the evidence used by respondent in making her determination. Shriver v. Commissioner, 85 T.C. 1, 3 (1985), affd. without published opinion (7th Cir., Oct. 3, 1986). This case does not involve a situation where there is alleged unreported illegal income and no direct evidence or link to the alleged income. Dellacroce v. Commissioner, 83 T.C. 269 (1984); Jackson v. Commissioner, 73 T.C. 394↩ (1979). Here the presumption of correctness attaches to the notice of deficiency which places upon petitioner the burden of proof and the burden of going forward with the evidence to show the correct amount of tip income. Petitioner failed in this burden (except to the extent of the adjustments described herein).