MICHAEL JOHN PETERMAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Peterman v. Commissioner
Docket No. 18991-90
United States Tax Court
T.C. Memo 1993-129; 1993 Tax Ct. Memo LEXIS 132; 65 T.C.M. (CCH) 2254; March 31, 1993, Filed *132 For petitioner: Deborah Szczpanski. For respondent: Steven D. Blanc and Scott M. Estill. JACOBS
JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION JACOBS, Judge: Respondent determined a deficiency of $ 26,840.10 [1] in petitioner's 1989 Federal income tax and an addition to tax of $ 2,715.52 pursuant to section 6662 for that year. All section references are to the Internal Revenue Code in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. Following a concession by petitioner, [2] the issues remaining for decision are: (1) Whether respondent's notice of deficiency was arbitrary and capricious; (2) whether petitioner had unreported income in 1989 from the illegal sale of cocaine (in addition to the conceded amount) and, if so, the amount of such income; and (3) *133 whether petitioner is liable for the accuracy-related penalty pursuant to section 6662 for 1989. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner resided in Chesterton, Indiana, at the time he filed the petition herein. Background
Petitioner is a 1983 high school graduate. Between January and June 1989, he worked as a phone clerk for Lit America, Inc. (Lit America), at the Chicago Mercantile Exchange in Chicago, Illinois. Petitioner earned $ 12,118.50 in wages from Lit America in 1989, which he reported on his 1989 Federal income tax return. Petitioner also reported *134 $ 2,730 in State of Illinois unemployment compensation benefits, and $ 383.68 in interest income on his 1989 return. He did not report any other income on the return. Petitioner's Illegal Drug Activities
Petitioner began selling cocaine in 1986. At first, he sold small quantities (approximately 1 gram) to acquaintances. He also personally used cocaine, but claims that he never became addicted. Among petitioner's customers was Kip Gillie (Mr. Gillie). Mr. Gillie purchased cocaine from petitioner on a regular basis, beginning after July 1988. As indicated below, Mr. Gillie participated in petitioner's April 1989 arrest as a police informant. From January 1 through April 25, 1989, petitioner purchased, distributed, and sold large quantities of cocaine. He purchased the cocaine in Chicago and transported it to his home in Porter, Indiana. He paid $ 23,000 for a kilogram of cocaine, $ 7,000 for 9 ounces, and "less than $ 1,000" for 1 ounce. Petitioner diluted or "cut" the cocaine that he sold with a vitamin called Inositol. He added 2 ounces of Inositol to every 9 ounces of cocaine. The cocaine that petitioner sold was considered to be high quality. During 1989, petitioner *135 sold cocaine to approximately 10-12 steady customers a week, including Mr. Gillie. Each customer purchased between 1 and 3 ounces of cocaine per week, and petitioner charged approximately $ 1,000 per ounce. The customers generally paid for their cocaine in cash. However, they sometimes paid with other items including collector's guns, gold coins, and hallucinogenic mushrooms. Petitioner usually possessed a sufficient amount of cocaine on hand to supply his customers. In fact, on several occasions during 1989, Mr. Gillie observed that petitioner possessed large quantities of cocaine, in excess of 1 pound. Petitioner used a portion of the income that he earned from selling cocaine to purchase additional cocaine. He hid the remaining cash in the basement of his home. Petitioner never deposited his cocaine profits in his bank account. Neither did he maintain any books or records to document his cocaine sales. Petitioner's Arrest
On April 25, 1989, petitioner was arrested by the Porter County Sheriff's Department. He was charged with dealing cocaine, possession of cocaine with intent to distribute, and possession of drug paraphernalia. Prior to petitioner's arrest, Mr. *136 Gillie (acting on behalf of law enforcement) made a "controlled buy" of 1 ounce of cocaine from petitioner while under police surveillance. The police placed a listening device or "body wire" on Mr. Gillie and provided him with marked bills with which to purchase the cocaine. Petitioner was arrested immediately after the sale. At the time of petitioner's arrest, officers from the Porter County Sheriff's Department executed a search warrant of petitioner's premises. Among the items recovered by the Sheriff's Department were the following: (a) Approximately 1 pound of cocaine; (b) an Ohaus brand double beam scale; (c) 1 large bottle of Inositol; (d) a brown wooden case containing 2 Colt handguns, $ 80 cash, and hallucinogenic mushrooms; (e) a small manila envelope containing $ 4,000 cash, including $ 2,000 of the marked bills that Mr. Gillie had been provided for the controlled buy; (f) another envelope containing $ 800 cash; (g) a brown wooden box containing several items including a .45 caliber automatic handgun and gold coins; (h) a .22 caliber rifle with scope; (i) drug paraphernalia; and (j) a green phone book, containing names and telephone numbers. This phone book contained *137 names of several of petitioner's customers, including Mr. Gillie. On December 28, 1990, petitioner pled guilty to one count of dealing in cocaine (a Class B felony under Indiana law), and one count of possession of cocaine in an amount greater than three grams (a Class C felony under Indiana law). On March 18, 1991, petitioner was sentenced to 4 years on the Class C felony and to 20 years on the Class B felony. Five years of the 20-year sentence were suspended. At the time of trial, petitioner was serving his 15-year sentence at the Westville Correctional Center in Indiana. Respondent's Reconstruction of Petitioner's Illegal Income
Respondent reconstructed petitioner's 1989 unreported cocaine income because he did not maintain any books or records. In the notice of deficiency, respondent determined that petitioner earned $ 80,000 of unreported illegal income during 1989. Respondent calculated the $ 80,000 amount in the following manner: Gross receipts per week
$  10,000
Number of weeks in 1989 for which
the activity was operated
x     16
Gross receipts for period
$ 160,000
Less: cost of goods sold
80,000
Net income from activity for
the period
$  80,000
*138 Petitioner was aware that he was required to report his cocaine income on his 1989 Federal income tax return. OPINION Validity of Notice of Deficiency
The first issue is whether respondent's notice of deficiency was arbitrary and capricious. Petitioner contends that the notice of deficiency was arbitrary and without foundation and, as a result, that the burden of going forward with the evidence should be placed on respondent. Respondent argues to the contrary. In general, a statutory notice of deficiency is presumed correct and the burden of proof, as well as the burden of going forward with the evidence, is placed upon the taxpayer. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). If, however, the taxpayer demonstrates that the notice of deficiency is arbitrary and excessive (e.g., without "factual foundation" or "rational basis"), the burden of going forward with the evidence shifts to respondent. Helvering v. Taylor, 293 U.S. 507, 514-515 (1935); Jackson v. Commissioner, 73 T.C. 394 (1979). When a taxpayer asks the Court to find a statutory notice of deficiency arbitrary, *139 we are requested to look behind the notice to examine the evidence used by the Commissioner in making the determination. Riland v. Commissioner, 79 T.C. 185, 201 (1982). Ordinarily, we will not look behind a notice of deficiency to examine the sufficiency of evidence used by the Commissioner. Dellacroce v. Commissioner, 83 T.C. 269, 280 (1984); Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327 (1974). This is because a trial before this Court is a proceeding de novo in which a taxpayer's tax liability is based on the merits of the case and not on any previous record developed at the administrative level. Greenberg's Express, Inc. v. Commissioner, supra at 327-328. As we observed in Rosano v. Commissioner, 46 T.C. 681, 687 (1966), "the Commissioner's determination may often rest upon hearsay or other inadmissible evidence, and we know of no rule of law calling for a review of the materials that were before the Commissioner in order to ascertain whether he relied upon improper evidence". However, this evidence *140 must reveal some connection between the taxpayer and an income-producing activity. Mere supposition will not do. Jackson v. Commissioner, supra.We have looked behind the statutory notice only in those rare instances involving illegal unreported income where the Commissioner introduced no substantive evidence, but rested solely on the presumption of correctness, or when there is substantial evidence of unconstitutional conduct on the part of respondent. United States v. Janis, 428 U.S. 433, 441 (1976); Jackson v. Commissioner, supra at 401. No particular form is required for a valid notice of deficiency, and the Commissioner need not explain how the deficiencies were determined. Campbell v. Commissioner, 90 T.C. 110, 115 (1988). The notice of deficiency need only advise the taxpayer that the Commissioner has in fact determined a deficiency and specify the year and deficiency amount. Id.; Foster v. Commissioner, 80 T.C. 34, 229-230 (1983), affd. in part and vacated in part 756 F.2d 1430 (9th Cir. 1985). *141 Based on the evidence presented, we hold that this is an inappropriate case for looking behind the notice of deficiency or for shifting the burden of going forward with the evidence from petitioner. Respondent introduced convincing substantive evidence to link petitioner to the tax-generating activity that formed the basis of the deficiency determination, i.e., the sale of cocaine. Respondent did not solely rest on the presumption of correctness. The evidence presented by respondent came from several sources. Petitioner admitted at trial that he sold cocaine during 1989. Assistant Chief of Police Bob Taylor of the Porter County Police Department (Assistant Chief Taylor) testified, and described the events culminating in petitioner's arrest, including Mr. Gillie's controlled purchase from petitioner. He further testified that the search of petitioner's residence, conducted immediately after petitioner's arrest, yielded the cash, cocaine, and drug paraphernalia described above. Assistant Chief Taylor's testimony was credible. Mr. Gillie also testified; we found him to be a credible witness. As a regular customer of petitioner since 1988, he was aware of petitioner's 1989 cocaine *142 sales, including the quantities of cocaine that petitioner usually possessed, the prices that he charged, and the quality of cocaine that he sold. (We note that Mr. Gillie did not make any "deal" or agreement with the Internal Revenue Service in exchange for his testimony in this case.) The testimony of Assistant Chief Taylor and Mr. Gillie established petitioner's connection to cocaine sales during 1989. This connection is further evidenced by the fact that petitioner pled guilty to one count of dealing in cocaine and one count of possession of cocaine in an amount greater than 3 grams. In sum, we reject petitioner's contention that the notice of deficiency was arbitrary and capricious, and accordingly decline to look behind the notice of deficiency to examine the evidence that respondent used in making the determination. We hold that the evidence presented is sufficient for petitioner to retain the burden of going forward and proving the incorrectness of the deficiency determination. See Petzoldt v. Commissioner, 92 T.C. 661, 691 (1989); Shriver v. Commissioner, 85 T.C. 1, 4 (1985), affd. by unpublished order (7th *143 Cir., Oct. 3, 1986). Unreported Drug Income
The second issue is whether petitioner had unreported income in 1989 from the illegal sale of cocaine (in addition to the conceded amount) and, if so, the amount of such income. Petitioner contends that he earned only $ 20,000 of taxable income from the sale of cocaine during 1989. He argues that all of the income that he earned from selling cocaine was seized at the time of his arrest and the search of his home. On the other hand, respondent argues that petitioner earned substantially more than $ 20,000 in unreported income during 1989. Based on all the facts in this case, we hold that petitioner had a total of $ 74,400 in unreported income from cocaine sales during 1989. [3] The income is, of course, taxable to petitioner. Section 61 defines gross income as "all income from whatever source derived". The broad reach of section 61 includes gains from illegal activities. James v. United States, 366 U.S. 213, 219-220 (1961); sec. 1.61-14(a), Income Tax Regs.
*144 Section 6001 requires that all taxpayers maintain adequate records to determine their correct tax liabilities. Absent adequate records, or if the records that are kept do not accurately reflect income, respondent may determine the existence and amount of a taxpayer's income by using any method that clearly reflects income. Sec. 446(b); United States v. Johnson, 319 U.S. 503, 517-518 (1943); Sutherland v. Commissioner, 32 T.C. 862, 866-867 (1959). It is proper for respondent to employ an indirect method to calculate income where the method used is reasonable. Holland v. United States, 348 U.S. 121 (1954); Davis v. Commissioner, 239 F.2d 187, 189 (7th Cir. 1956), affg. T.C. Memo. 1955-87; Giddio v. Commissioner, 54 T.C. 1530, 1533 (1970). The reconstruction need only be reasonable in light of all surrounding facts and circumstances. Giddio v. Commissioner, supra; Schroeder v. Commissioner, 40 T.C. 30, 33 (1963). Where a taxpayer fails *145 to maintain records, courts have approved of the Commissioner's reconstruction of a taxpayer's gross receipts and costs to determine taxable income. Jones v. Commissioner, 903 F.2d 1301, 1303 (10th Cir. 1990), affg. in part and revg. in part T.C. Memo. 1988-373. Petitioner failed to provide any books, records, or other evidence to document his cocaine business. As a result, respondent calculated petitioner's 1989 illegal income based on available evidence. Among the information used was the testimony of Mr. Gillie, petitioner, and Assistant Chief Taylor. We hold that respondent's method of calculation (as revised on brief) was reasonable. Mr. Gillie, petitioner, and Assistant Chief Taylor provided information to support the various elements of respondent's calculation. Mr. Gillie and petitioner both testified that petitioner sold cocaine from January 1989 through the time of his arrest on April 25, 1989. Mr. Gillie testified that he purchased 1 to 2 ounces of cocaine from petitioner during each week in 1989, at a cost of $ 1,000 per ounce. He further testified that petitioner had approximately 10-12 steady customers *146 for cocaine during this period. Assistant Chief Taylor testified that informants had indicated that petitioner was transporting up to a kilogram of cocaine per week from Chicago for resale in Indiana when necessary. He further testified that the street value of a kilogram of cocaine in 1989 was $ 23,000. Petitioner testified that he diluted the cocaine that he purchased by adding 2 ounces of Inositol for each nine ounces of cocaine. He also stated that he did not personally consume any of the purchased cocaine during 1989. Using all of this evidence, respondent conservatively calculated that petitioner earned net income from cocaine sales during 1989 in the amount of $ 74,400 (see not 3 supra). In contrast, petitioner failed to introduce any evidence to corroborate his self-serving testimony that he only earned $ 20,000 of taxable income during 1989 from the cocaine sales. We are not required to, and do not, accept his self-serving testimony, particularly in the absence of corroborating evidence. See Geiger v. Commissioner, 440 F.2d 688, 689 (9th Cir. 1971), affg. per curiam T.C. Memo. 1969-159; Urban Redevelopment Corp. v. Commissioner, 294 F.2d 328, 332 (4th Cir. 1961), *147 affg. 34 T.C. 845 (1960). In short, petitioner has failed to meet his burden of proof. The evidence of his participation in the illegal drug trade contradicts and outweighs his testimony that he earned only $ 20,000 of unreported income during 1989. Accordingly, we hold that respondent's calculation of petitioner's cocaine sales, cost basis for cocaine, and income amounts for 1989 was reasonable. See sec. 446(b); United States v. Johnson, supra; Jackson v. Commissioner, 73 T.C. 394, 403 (1979). We therefore hold that petitioner earned unreported taxable income of $ 74,400 for 1989. Shriver v. Commissioner, 85 T.C. 1 (1985), affd. by unpublished order (7th Cir., Oct. 3, 1986). Section 6662 Addition to Tax
The final issue is whether petitioner is liable for the accuracy-related penalty pursuant to section 6662 [4] for 1989. Petitioner argues that he is not liable for this addition to tax. Respondent contends otherwise. *148 Section 6662 provides that a 20-percent addition to tax is imposed on the portion of an underpayment attributable to one or more of the following: An understatement attributable to negligence, a substantial understatement, any substantial valuation misstatement, a substantial overstatement of pension liabilities, or a substantial estate or gift tax valuation understatement. Here, respondent contends that the section 6662 penalty should be imposed on the portion of the underpayment attributable to either negligence [5] or a substantial understatement [6] of income tax. *149 Petitioner has the burden of proof on this issue. Rule 142(a). He has failed to carry this burden. Petitioner admitted at trial that he intentionally disregarded the provisions of the Internal Revenue Code requiring him to report his illegal income from cocaine sales. He further admitted that he dealt in cash and kept no books or records. He also attempted to conceal his illegal income by hiding his profits at his home. Based all on the evidence before us, we conclude that petitioner was negligent. Furthermore, petitioner only reported $ 15,232.18 of taxable income on his 1989 Federal income tax return. He admitted that he failed to report $ 20,000 in unreported income, and we have held that he had a total of $ 74,400 in unreported income for 1989. Thus petitioner's understatement is "substantial" and he is liable for the section 6662 penalty. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. This total deficiency includes $ 4,629 attributable to self-employment tax. The parties did not separately brief this issue, and we will not address it apart from the underlying income tax deficiency.↩
2. At trial, petitioner conceded that he omitted $ 20,000 of taxable income from cocaine sales on his 1989 Federal income tax return. Previously, in July 1989, petitioner signed a closing agreement with respondent, agreeing that respondent's $ 26,523 termination assessment was correct to the extent of $ 13,261.50.↩
3. As stated, respondent determined in the notice of deficiency that petitioner had $ 80,000 of unreported income from cocaine sales in 1989. Respondent supported this determination with the calculation reproduced above in the Findings of Fact. At trial, the Court asked respondent to provide additional details about how the $ 80,000 amount was formulated. On brief, respondent "conservatively" stated that, based on the evidence presented at trial, the amount of petitioner's unreported income was $ 74,400. Respondent calculated that amount in the following manner: Total Sales During 1989
Number of weeks
16  Street price per ounce
$  1,000  Total ounces sold per week
10  Total sales per week (10 X $ 1,000)
$ 10,000  Total sales ($ 10,000 per week X 16 weeks)
$ 160,000
Less Cost of Cocaine
Number of weeks
16  Cost of 1 kilogram
$ 23,000  Ounces per kilogram
35.2
Additional ounces due to dilution
(2/9 X 35.2)
7.8
Total ounces
43.0
Cost per ounce ($ 23,000/43 oz.)
$    535  Total cost per week ($ 535 X 10)
$  5,350  Total cost of goods sold in 1989
($ 5,350 per week X 16 weeks)
$  85,600
Net income from cocaine sales in 1989
$  74,400
We note that no evidence was presented as to the cost of the Inositol used to dilute the cocaine. We are unable to estimate such cost. Since petitioner bears the burden of proof, we do not take such cost, if any, into account in determining the cost of cocaine sold. We also note that, in addition to the $ 74,400 income amount, respondent provided other alternative calculations, which yielded greater unreported income amounts. However, based on all the evidence before us, we adopt $ 74,400 as the amount of petitioner's unreported taxable income for 1989.↩
4. The additions to tax for negligence (sec. 6653(a)), valuation overstatements (sec. 6659), and substantial understatements of tax liability (sec. 6661) were repealed for income tax returns due to be filed after Dec. 31, 1989, and were replaced with an accuracy-related penalty under sec. 6662. Omnibus Budget Reconciliation Act of 1989, Pub. L. 101-239, sec. 7721(c), 103 Stat. 2106, 2399.↩
5. The accuracy-related penalty imposed for negligence (sec. 6662(b)(1)) has primarily the same requirements as found in sec. 6653(a) except that the amount of the penalty differs. Sec. 6662(a) provides for an amount equal to 20 percent of the portion of the underpayment to which that section applies. Pursuant to sec. 6662(c), "negligence" is defined as "any failure to make a reasonable attempt to comply with the provisions of this title," while "disregard" is defined as "any careless, reckless, or intentional disregard."↩
6. Pursuant to sec. 6662(d)(1)(A), a substantial understatement of income tax exists for any taxable year if the amount of the understatement for the taxable year exceeds the greater of - (i) 10 percent of the tax required to be shown on the return for the taxable year, or (ii) $ 5,000.↩